# UNITED STATES *v.* COTTON ET AL.

No. 01–687.   Argued April 15, 2002—Decided May 20, 2002

*Deputy Solicitor General Dreeben* argued the cause for the United States. With him on the briefs were *Solicitor*

General Olson, Assistant Attorney General Chertoff, Barbara McDowell, and Nina Goodman.

Timothy J. Sullivan argued the cause for respondents. With him on the brief were Arthur S. Cheslock, James E. McCollum, Jr., Carter G. Phillips, Jeffrey T. Green, Paul J. Zidlicky, and Stanley H. Needleman.*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

In Apprendi v. New Jersey, 530 U. S. 466 (2000), we held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id., at 490. In federal prosecutions, such facts must also be charged in the indictment. Id., at 476 (quoting Jones v. United States, 526 U. S. 227, 243, n. 6 (1999)). In this case, we address whether the omission from a federal indictment of a fact that enhances the statutory maximum sentence justifies a court of appeals' vacating the enhanced sentence, even though the defendant did not object in the trial court.

Respondent Stanley Hall, Jr., led a "vast drug organization" in Baltimore. 261 F. 3d 397, 401 (CA4 2001). The six other respondents helped run the operation. In October 1997, a federal grand jury returned an indictment charging respondents with conspiring to distribute and to possess with intent to distribute 5 kilograms or more of cocaine and 50 grams or more of cocaine base, in violation of 21 U. S. C. §§ 846 and 841(a)(1). A superseding indictment returned in March 1998, which extended the time period of the conspiracy and added five more defendants, charged a conspiracy to

---

*Clayton A. Sweeney, Jr., Mary Price, Peter Goldberger, David Porter, Joshua L. Dratel, and Lisa Bondareff Kemler filed a brief for the National Association of Criminal Defense Lawyers et al. as amici curiae urging affirmance.

distribute and to possess with intent to distribute a "detectable amount" of cocaine and cocaine base. The superseding indictment did not allege any of the threshold levels of drug quantity that lead to enhanced penalties under § 841(b).

In accord with the superseding indictment, the District Court instructed the jury that "as long as you find that a defendant conspired to distribute or posses[s] with intent to distribute these controlled substances, the amounts involved are not important." App. to Pet. for Cert. 6a (emphasis deleted). The jury found respondents guilty.

Congress established "a term of imprisonment of not more than 20 years" for drug offenses involving a detectable quantity of cocaine or cocaine base. § 841(b)(1)(C). But the District Court did not sentence respondents under this provision. Consistent with the practice in federal courts at the time, at sentencing the District Court made a finding of drug quantity that implicated the enhanced penalties of § 841(b)(1)(A), which prescribes "a term of imprisonment which may not be . . . more than life" for drug offenses involving at least 50 grams of cocaine base. The District Court found, based on the trial testimony, respondent Hall responsible for at least 500 grams of cocaine base, and the other respondents responsible for at least 1.5 kilograms of cocaine base. The court sentenced respondents Hall and Powell to 30 years' imprisonment and the other respondents to life imprisonment. Respondents did not object in the District Court to the fact that these sentences were based on an amount of drug quantity not alleged in the indictment.

While respondents' appeal was pending in the United States Court of Appeals for the Fourth Circuit, we decided *Apprendi* v. *New Jersey, supra.* Respondents then argued in the Court of Appeals that their sentences were invalid under *Apprendi*, because the issue of drug quantity was neither alleged in the indictment nor submitted to the petit

jury. The Court of Appeals noted that respondents "failed to raise this argument before the district court" and thus reviewed the argument for plain error. 261 F. 3d, at 403 (citing Fed. Rule Crim. Proc. 52(b)). A divided court nonetheless vacated respondents' sentences on the ground that "because an indictment setting forth all the essential elements of an offense is both mandatory and jurisdictional, . . . a court is without jurisdiction to . . . *impose a sentence* for an offense not charged in the indictment." 261 F. 3d, at 404–405 (internal quotation marks omitted). Such an error, the Court of Appeals concluded, "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.*, at 406. We granted certiorari, 534 U. S. 1074 (2002), and now reverse.

We first address the Court of Appeals' conclusion that the omission from the indictment was a "jurisdictional" defect and thus required vacating respondents' sentences. *Ex parte Bain,* 121 U. S. 1 (1887), is the progenitor of this view. In *Bain,* the indictment charged that Bain, the cashier and director of a bank, made false statements "with intent to deceive the Comptroller of the Currency and the agent appointed to examine the affairs" of the bank. *Id.,* at 4. Before trial, the court struck the words "the Comptroller of the Currency and," on the ground that they were superfluous. The jury found Bain guilty. *Id.,* at 4–5. Bain challenged the amendment to the indictment in a petition for a writ of habeas corpus. The Court concluded that the amendment was improper and that therefore "the jurisdiction of the offence [was] gone, and the court [had] no right to proceed any further in the progress of the case for want of an indictment." *Id.,* at 13.

*Bain,* however, is a product of an era in which this Court's authority to review criminal convictions was greatly circumscribed. At the time it was decided, a defendant could not obtain direct review of his criminal conviction in the Su-

preme Court.[1]  See generally *United States* v. *Sanges,* 144 U. S. 310, 319–322 (1892); L. Orfield, Criminal Appeals in America 244–246 (1939).  The Court's authority to issue a writ of habeas corpus was limited to cases in which the convicting "court had no jurisdiction to render the judgment which it gave." *Bain, supra,* at 3; see also *Preiser* v. *Rodriguez,* 411 U. S. 475, 485 (1973).  In 1887, therefore, this Court could examine constitutional errors in a criminal trial only on a writ of habeas corpus, and only then if it deemed the error "jurisdictional."  The Court's desire to correct obvious constitutional violations led to a "somewhat expansive notion of 'jurisdiction,'" *Custis* v. *United States,* 511 U. S. 485, 494 (1994), which was "more a fiction than anything else," *Wainwright* v. *Sykes,* 433 U. S. 72, 79 (1977).

*Bain's* elastic concept of jurisdiction is not what the term "jurisdiction" means today, *i. e.,* "the courts' statutory or constitutional *power* to adjudicate the case." *Steel Co.* v. *Citizens for Better Environment,* 523 U. S. 83, 89 (1998).  This latter concept of subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.  Consequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court.  See, *e. g., Louisville & Nashville R. Co.* v. *Mottley,* 211 U. S. 149 (1908).  In contrast, the grand jury right can be waived.  See Fed. Rule Crim. Proc. 7(b); *Smith* v. *United States,* 360 U. S. 1, 6 (1959).

Post-*Bain* cases confirm that defects in an indictment do not deprive a court of its power to adjudicate a case.  In *Lamar* v. *United States,* 240 U. S. 60 (1916), the Court rejected the claim that "the court had no jurisdiction because the indictment does not charge a crime against the United States." *Id.,* at 64.  Justice Holmes explained that a dis-

---

[1] In 1889, Congress authorized direct review of capital cases in the Supreme Court.  See 25 Stat. 655.  In 1891, this right was extended to defendants in all cases involving "infamous crime[s]."  26 Stat. 827; see *In re Claasen,* 140 U. S. 200 (1891).

trict court "has jurisdiction of all crimes cognizable under the authority of the United States . . . [and] [t]he objection that the indictment does not charge a crime against the United States goes only to the merits of the case." *Id.,* at 65. Similarly, *United States* v. *Williams,* 341 U. S. 58, 66 (1951), held that a ruling "that the indictment is defective does not affect the jurisdiction of the trial court to determine the case presented by the indictment."

Thus, this Court some time ago departed from *Bain's* view that indictment defects are "jurisdictional." *Bain* has been cited in later cases such as *Stirone* v. *United States,* 361 U. S. 212 (1960), and *Russell* v. *United States,* 369 U. S. 749 (1962), for the proposition that "an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form," *id.,* at 770 (citing *Bain, supra*). But in each of these cases proper objection had been made in the District Court to the sufficiency of the indictment. We need not retreat from this settled proposition of law decided in *Bain* to say that the analysis of that issue in terms of "jurisdiction" was mistaken in the light of later cases such as *Lamar* and *Williams.* Insofar as it held that a defective indictment deprives a court of jurisdiction, *Bain* is overruled.

Freed from the view that indictment omissions deprive a court of jurisdiction, we proceed to apply the plain-error test of Federal Rule of Criminal Procedure 52(b) to respondents' forfeited claim. See *United States* v. *Olano,* 507 U. S. 725, 731 (1993). "Under that test, before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson* v. *United States,* 520 U. S. 461, 466–467 (1997) (quoting *Olano, supra,* at 732). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error "seriously affect[s] the fairness, integrity, or public reputation of judicial pro-

ceedings." 520 U. S., at 467 (internal quotation marks omit-ted) (quoting *Olano, supra,* at 732).

The Government concedes that the indictment's failure to allege a fact, drug quantity, that increased the statutory maximum sentence rendered respondents' enhanced sentences erroneous under the reasoning of *Apprendi* and *Jones.* The Government also concedes that such error was plain. See *Johnson, supra,* at 468 ("[W]here the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be 'plain' at the time of appellate consideration").

The third inquiry is whether the plain error "affect[ed] substantial rights." This usually means that the error "must have affected the outcome of the district court proceedings." *Olano, supra,* at 734. Respondents argue that an indictment error falls within the "limited class" of "structural errors," *Johnson, supra,* at 468–469, that "can be corrected regardless of their effect on the outcome," *Olano, supra,* at 735. Respondents cite *Silber* v. *United States,* 370 U. S. 717 (1962) *(per curiam),* and *Stirone* v. *United States, supra,* in support of this position.[2] The Government counters by noting that *Johnson's* list of structural errors did not include *Stirone* or *Silber,* see 520 U. S., at 468–469, and that the defendants in both of these cases preserved their claims at trial.

As in *Johnson* (see *id.,* at 469), we need not resolve whether respondents satisfy this element of the plain-error inquiry, because even assuming respondents' substantial rights were affected, the error did not seriously affect the

---

[2] Respondents also argue that even if the indictment defect is not structural error, it did affect their substantial rights because they were sentenced to more than the 20-year maximum that § 841(b) authorizes without regard to drug quantity. The Government responds that the defendants had notice that their sentences could exceed 20 years, and that the grand jury would have found that the conspiracy involved at least 50 grams of cocaine base had the Government sought such an allegation.

fairness, integrity, or public reputation of judicial proceedings. The error in *Johnson* was the District Court's failure to submit an element of the false statement offense, materiality, to the petit jury. The evidence of materiality, however, was "overwhelming" and "essentially uncontroverted." *Id.*, at 470. We thus held that there was "no basis for concluding that the error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'" *Ibid.*

The same analysis applies in this case to the omission of drug quantity from the indictment. The evidence that the conspiracy involved at least 50 grams of cocaine base was "overwhelming" and "essentially uncontroverted."[3] Much of the evidence implicating respondents in the drug conspiracy revealed the conspiracy's involvement with far more than 50 grams of cocaine base. Baltimore police officers made numerous state arrests and seizures between February 1996 and April 1997 that resulted in the seizure of 795 ziplock bags and clear bags containing approximately 380 grams of cocaine base. 20 Record 179–244. A federal search of respondent Jovan Powell's residence resulted in the seizure of 51.3 grams of cocaine base. 32 *id.*, at 18–30. A cooperating co-conspirator testified at trial that he witnessed respondent Hall cook one-quarter of a kilogram of cocaine powder into cocaine base. 22 *id.*, at 208. Another cooperating co-conspirator testified at trial that she was present in a hotel room where the drug operation bagged one kilogram of cocaine base into ziplock bags. 27 *id.*, at 107–108. Surely the grand jury, having found that the conspiracy existed, would have also found that the conspiracy involved at least 50 grams of cocaine base.

---

[3] Respondents challenged the presentence reports' assignment of a base offense level of 38, which is applicable to 1.5 kilograms or more of cocaine base. But they never argued that the conspiracy involved less than 50 grams of cocaine base, which is the relevant quantity for purposes of *Apprendi*, as that is the threshold quantity for the penalty of life imprisonment in 21 U. S. C. § 841(b)(1)(A).

Respondents emphasize that the Fifth Amendment grand jury right serves a vital function in providing for a body of citizens that acts as a check on prosecutorial power. No doubt that is true. See, *e. g.,* 3 Story, Commentaries on the Constitution § 1779 (1883), reprinted in 5 The Founders' Constitution 295 (P. Kurland & R. Lerner eds. 1987). But that is surely no less true of the Sixth Amendment right to a petit jury, which, unlike the grand jury, must find guilt beyond a reasonable doubt. The important role of the petit jury did not, however, prevent us in *Johnson* from applying the longstanding rule "that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right . . . ." *Yakus* v. *United States,* 321 U. S. 414, 444 (1944).

In providing for graduated penalties in 21 U. S. C. § 841(b), Congress intended that defendants, like respondents, involved in large-scale drug operations receive more severe punishment than those committing drug offenses involving lesser quantities. Indeed, the fairness and integrity of the criminal justice system depends on meting out to those inflicting the greatest harm on society the most severe punishments. The real threat then to the "fairness, integrity, and public reputation of judicial proceedings" would be if respondents, despite the overwhelming and uncontroverted evidence that they were involved in a vast drug conspiracy, were to receive a sentence prescribed for those committing less substantial drug offenses because of an error that was never objected to at trial. Cf. *Johnson, supra,* at 470 (quoting R. Traynor, The Riddle of Harmless Error 50 (1970)).

Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*