**UNITED STATES of America,
Appellee,**

v.

**Steven FARES, Alex Fares, Moussa Fares, Rafael Fares, also known as Rophail Fares, Defendants,**

---

Mohammed **FARES**, Halime Fares Cristo, also known as Halim Cristo, Defendants–Appellants.

Nos. 03–1233(Lead), 03–1246(Con).

United States Court of Appeals, Second Circuit.

April 22, 2004.

Richard A. Finkel, Meissner, Kleinberg & Finkel, LLP, New York, NY, for Defendant–Appellant Mohammed Fares.

Donald D. DuBoulay, New York NY, for Defendant–Appellant Halime Fares Cristo.

Adam B. Siegel, Assistant United States Attorney, Southern District of New York (James B. Comey, United States Attorney for the Southern District of New York, on the brief; Jonathan R. Streeter and Gary Stein, Assistant United States Attorneys), New York, NY, for Appellee, of counsel.

Present: STRAUB, POOLER, and B.D. PARKER, Circuit Judges.

## SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.

Defendant–Appellant Mohammed Fares ("Fares") appeals from a April 10, 2003 judgment of the United States District Court for the Southern District of New York (William H. Pauley, III, *Judge*) convicting him, after a jury trial, of conspiring to launder money in violation of 18 U.S.C. § 1956(h), conspiring to structure bank deposits in violation of 18 U.S.C. § 371, and structuring bank deposits in violation of 31 U.S.C. § 5324(a)(3) and (d)(2) and 18 U.S.C. § 2. Fares was sentenced primarily to a term of 121 months' imprisonment. Defendant–Appellant Halime Fares Cristo ("Cristo") appeals from a judgment of conviction entered on April 10, 2003 in the United States District Court for the Southern District of New York (William H. Pauley, III, *Judge* ) after a separate jury trial. Cristo was convicted of conspiring to launder money in violation of 18 U.S.C. § 1956(h) and conspiring to structure bank deposits in violation of 18 U.S.C. § 371, and was sentenced primarily to a term of 87 months' imprisonment.

■ Cristo argues that her conviction for conspiracy to launder money should be reversed because the government's evidence was insufficient to show that the funds at issue were in fact the proceeds of narcotics trafficking and was also insufficient to show that Cristo knew that the funds were the proceeds of narcotics trafficking. "[A] defendant making an insufficiency claim bears a very heavy burden." *United States v. Desena,* 287 F.3d 170, 177 (2d Cir.2002). To succeed on her claim, Cristo "must show that no rational trier of fact, viewing the evidence in the light most favorable to the government, could have found [her] guilty beyond a reasonable doubt of the essential elements of the crimes charged." *Id.* at 176. In reviewing a sufficiency challenge, we "resolve all inferences from the evidence and issues of credibility in favor of the [guilty] verdict." *United States v. Howard,* 214 F.3d 361, 363 (2d Cir.), *cert. denied,* 531 U.S. 909, 121 S.Ct. 258, 148 L.Ed.2d 187 (2000).

Cristo was convicted of conspiring to launder money in violation of 18 U.S.C. § 1956(h), with the object of the conspira-

cy being the violation of 18 U.S.C. § 1956(a)(2)(B)(i)—the so-called "international" prong of the money laundering statute. As the government acknowledges, there is some lack of clarity regarding the elements of § 1956(a)(2)(B)(i). We decline to resolve those issues in the present case because even under the reading of the statute that is most favorable to Cristo, there was ample evidence presented at trial supporting her conviction of conspiring to violate § 1956(a)(2)(B)(i). In particular, we find that there was sufficient evidence that 1) Cristo agreed to launder and did launder money that was in fact the proceeds of narcotics trafficking and 2) Cristo knew, or consciously avoided knowing, that she was laundering the proceeds of narcotics trafficking.

With respect to the first issue, the evidence showed that in a one year period, Cristo and her cousin received over $7 million in small bills from a person named Chaitilly and deposited them into their personal and corporate banking accounts. These funds were delivered in large bags, suitcases, and backpacks from a number of different people, some of whom they did not know. They were instructed to make deposits of less than $10,000 "so there would be no [government] investigation about the companies" into which the deposits were made. They were frequently contacted by Chaitilly from Panama or Columbia and instructed to transfer large amounts of money to entities in Latin and South America. All of these activities were consistent with the practices of an international money laundering scheme used by Columbian narcotics traffickers known as the "Black Market Peso Exchange." Viewing the evidence in the light most favorable to the government, the evidence supports a finding that the deposited funds were the proceeds of narcotics trafficking.

The evidence also supports a finding that Cristo herself knew, or was willfully blind to, the fact that the money was derived from narcotics trafficking. She was present when Chaitilly explained the details of his money laundering business and the need to structure bank deposits to evade reporting requirements. Cristo received half of the 3%–5% commission she and her cousin were provided for depositing funds for Chaitilly. Cristo had even been told at one point by her cousin that the money they received from Chaitilly could be "drug money." Her response—"we don't know if it's drug money, it was not drug money" and "we don't care about that. We just receive the money, we deposit it in, and we make a check[ ], so we're not doing any harm"—is strongly indicative of conscious avoidance. Cristo's own appeal brief appears to concede that someone in her circumstances should have known at least that the funds were from an illegal source: "Certainly the amount of cash and the structuring of deposits would alert a reasonable person to the likelihood that the money was the proceeds of some illegal activity." Viewing this evidence in the light most favorable to the government, the evidence establishes Cristo's knowledge or conscious avoidance of the fact that the money was from narcotics trafficking.

■ Cristo argues also that her convictions should be reversed because she was denied due process and a fair trial by the government's summation, in which it called aspects of her testimony "preposterous," a "lie," an "obvious lie," and a "ridiculous lie." Cristo did not object to the comments at trial and thus we review for plain error. *See United States v. Cotton,* 535 U.S. 625, 631, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). We conclude that the government's summation remarks are not grounds for reversal. *See United States v.*

*Rivera,* 22 F.3d 430, 437 (2d Cir.1994) ("If the defendant failed to make timely objection to a statement contained in the prosecutor's summation, the statement will not be deemed a ground for reversal unless it amounts to a 'flagrant abuse.'"); *United States v. Peterson,* 808 F.2d 969, 977 (2d Cir.1987) ("Use of the words 'liar' and 'lie' to characterize disputed testimony when the witness's credibility is clearly in issue is ordinarily not improper unless such use is excessive or is likely to be inflammatory.").

■ Cristo challenges her sentence on two grounds, arguing that the District Court erred in 1) attributing $7 million in laundered money to Cristo for sentencing purposes and 2) finding that Cristo knew or consciously avoided knowing that the funds she was laundering were proceeds of narcotics activity, and applying a three-level enhancement under U.S.S.G. § 2S1.1(b)(1). Fares also challenges his sentence on two grounds, arguing that the District Court erred in 1) applying the three level enhancement under U.S.S.G. § 2S1.1(b)(1) and 2) failing to grant a four-level downward adjustment for minimal participation, pursuant to U.S.S.G. § 3B1.2(a).

"We review a sentencing court's findings of fact for clear error and its legal determinations *de novo,* giving due deference to its application of the Sentencing Guidelines to the facts." *United States v. Downing,* 297 F.3d 52, 60 (2d Cir.2002) (internal quotation marks omitted); *see also* 18 U.S.C. § 3742(e). We have reviewed the arguments of both Fares and Cristo regarding errors in their sentences and find them to be without merit.

First, the evidence supports the District Court's finding that both Fares and Cristo knew, or at least consciously avoided knowing, that they were laundering the proceeds of narcotics trafficking. *See*

*United States v. Finkelstein,* 229 F.3d 90, 95–97 (2d Cir.2000) (applying conscious avoidance doctrine in considering whether enhancement was proper under U.S.S.G. § 2S1.1(b)(1)). With respect to Fares, the evidence showed he and his brothers received almost $14 million in cash over a period of 30 months. Cash was frequently brought to Fares' store, where he worked seven days a week. The store itself only generated $2,000 to $3,000 from sales a day, but up to $80,000 was deposited into the Broadway National Bank in a single day. Some of the money was deposited into accounts opened in the names of fictitious entities, including two accounts that Fares personally opened. Fares himself had lived in Columbia for a significant length of time and would likely have known about the massive drug trade in that country. It was not unreasonable for the District Court to conclude that Fares understood, or consciously avoided knowing, that the funds he was depositing were drug-related. With respect to Cristo, we note Cristo's reaction to her cousin's concern that they were being given drug money to deposit. Cristo's response—"we don't care about that"—supports a finding that she consciously avoided knowing that the money represented drug proceeds.

■ Second, Fares, who received a two-level reduction based on his minor role in the offense, was not entitled to a four-level reduction for minimal role because of the extent and duration of his involvement in the money laundering conspiracy. The evidence showed that Fares was involved with hundreds of structured deposits. Once or twice a week, for approximately 120 weeks, he personally deposited funds on behalf of the conspiracy and provided funds for others to make deposits. In addition, Fares opened two bank accounts through which approximately $5 million

was laundered. This conduct far exceeds minimal involvement as contemplated by the Guidelines. *See* U.S.S.G. § 3B1.2, cmt. n. 4 ("[The minimal participant adjustment] is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant. It is intended that the downward adjustment for a minimal participant will be used infrequently.").

■ Finally, we find no error in the District Court's decision to attribute $7 million in laundered money to Cristo. The evidence showed that she and her cousin acted as equal partners in the laundering operation and shared equally in the profits. Accordingly, the District Court properly found that the $7 million was within the scope of their agreement and was foreseeable to Cristo. *See United States v. Studley*, 47 F.3d 569, 574 (2d Cir.1995).

For the reasons set forth above, the judgment of the District Court is hereby AFFIRMED.