**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 2, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　　　Plaintiff-Appellee,

v.

ISAURO SAMORA-SANCHEZ,

　　　　Defendant-Appellant.

No. 04-2042

United States District Court for the
District of New Mexico

(D.C. No. CR-03-2492-LH)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **McCONNELL**, and **PORFILIO**, Circuit Judges.

This case returns to us after the Supreme Court granted certiorari, vacated

the original judgment, and remanded for reconsideration in light of *United States*

*v. Booker*, 125 S.Ct. 738 (2005). *Samora-Sanchez v. United States*, 125 S.Ct.

1867 (2005).

The district court sentenced Mr. Samora-Sanchez under the United States

Sentencing Guidelines to a sentence of 41 months. On direct appeal, Mr. Samora-

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Sanchez raised two constitutional challenges to the Sentencing Guidelines, neither of them based on the Sixth Amendment, and contended that he should be sentenced without regard to the Guidelines. In an unpublished Order and Judgement, this Court rejected those arguments and affirmed the sentence. *United States v. Samora-Sanchez*, 122 Fed. Appx. 909, 910 (10th Cir. 2004). Mr. Samora-Sanchez sought a writ of certiorari from the Supreme Court. Subsequently, the Supreme Court rendered its decision in *Booker*, and vacated and remanded this case for reconsideration in light of *Booker*.

On remand, Mr. Samora-Sanchez offers two arguments for requiring the district court to resentence him. First, he contends that his argument at sentencing that the Sentencing Guidelines violated the separation of powers was sufficient to preserve his argument that his sentence violates the Sixth Amendment. If he properly preserved the error, he continues, the error was not harmless and requires a remand for resentencing. In the alternative, Mr. Samora-Sanchez argues that if he did not properly preserve the error his sentence was plainly erroneous and should be remanded to the district court. We disagree with both arguments and AFFIRM.

## I.

On October 14, 2003, a Border Patrol Agent encountered Mr. Samora-

Sanchez in a Greyhound bus station in Albuquerque, New Mexico.[1]  Mr. Samora-

Sanchez admitted that he was a Mexican citizen illegally in the United States.  A

check of immigration records revealed that Mr. Samora-Sanchez had been

deported from Laredo, Texas on February 28, 2001.  This deportation occurred

after he was convicted in June 2000 in Oklahoma of assault with a deadly weapon

and of carrying a firearm while intoxicated.  There was no record of Mr. Samora-

Sanchez receiving consent from the Secretary of Homeland Security to reapply for

admission into the United States.

Mr. Samora-Sanchez entered into an agreement pleading guilty to the

offense of reentry of a deported alien previously convicted of an aggravated

felony in violation of 8 U.S.C. § 1326(a)(1) and (2), and (b)(2).  At sentencing he

requested a downward departure of two levels, based on U.S.S.G. § 5H1.6, due to

his extensive family obligations.  The district court rejected the departure, but did

express sympathy for Mr. Samora-Sanchez's situation:

> I am unable to come to the conclusion that his case falls outside the
> heartland.  And I would like to help you, but my judgment is that if I
> did, I would be abusing my discretion and treating him differently
> than others in the same situation.  And I'm therefore unable to
> conclude that his case warrants a downward departure.  I have
> personally seen in Central and South America the poverty and
> difficulty that people such as his relatives have in making a living,

---

[1]  This factual overview borrows liberally from the original order and judgment. *United States v. Samora-Sanchez*, 122 Fed. Appx. 909, 910 (10th Cir. 2004).

and I wish there was something more I could do; but I can't do this. Sent. Tr. 12, Aplt. Supp. Br., Attachment B. Mr. Samora-Sanchez also challenged the constitutionality of the Guidelines as a whole and the constitutionality of the PROTECT Act on the grounds that the Guidelines and the PROTECT Act violated the separation of powers.

On his initial appeal Mr. Samora-Sanchez confined his claims to the separation of powers arguments. This Court rejected Mr. Samora-Sanchez's argument about the PROTECT Act because he lacked standing and rejected the claim about the Guidelines on the merits. *Samora-Sanchez*, 122 Fed. Appx. at 910-11. Mr. Samora-Sanchez petitioned the Supreme Court for a writ of certiorari. The Court granted the petition, vacated the original judgment, and remanded for reconsideration in light of *United States v. Booker*, 125 S.Ct. 738 (2005). *Samora-Sanchez*, 125 S.Ct. at 1867.

## II.

Mr. Samora-Sanchez first argues that he preserved any *Booker* error and we should review his sentence for harmless error. We disagree. At sentencing, Mr. Samora-Sanchez challenged the constitutionality of the Guidelines as a whole and the PROTECT Act on separation of powers grounds. *Booker* is not a separation of powers case. *Booker* holds that it violates the Sixth Amendment to increase a defendant's sentence mandatorily on the basis of judge-found facts. *Booker*, 125

-4-

S.Ct. at 756. While this Court liberally construes challenges to the Guidelines based on the Sixth Amendment, *Apprendi*, *Blakely*, or variants thereof, as preserving *Booker* error (even if the defendant did not precisely anticipate the Supreme Court's holding in *Booker*), *see United States v. Labastida-Segura*, 396 F.3d 1140, 1142-43 (10th Cir. 2005), not all constitutional challenges to the Guidelines are within the ballpark of *Booker* error. Mr. Samora-Sanchez's arguments were grounded in the separation of powers, and not the Sixth Amendment, and thus did not suffice to preserve the issue. Accordingly, harmless error analysis is not appropriate in this case.

We turn to Mr. Samora-Sanchez's alternative argument that his sentence constitutes plain error. To show plain error Mr. Samora-Sanchez must show that the district court: (1) committed error, (2) that was plain, (3) affected his substantial rights, and (4) the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Cotton*, 535 U.S. 625, 631-32 (2002). There are two types of *Booker* plain errors: constitutional and non-constitutional. *See United States v. Gonzalez-Huerta*, 403 F.3d 727, 731-32 (10th Cir. 2005) (en banc). Constitutional errors are a consequence of mandatorily increasing a sentence on the basis of judge-found facts while non-constitutional errors arise when defendants receive sentences pursuant to mandatory guidelines. *Id.* The parties agree that this case involves only non-

constitutional errors because the judge did not find any facts that enhanced Mr. Samora-Sanchez's sentence. Moreover, the government concedes the first three prongs of the plain error test. Thus, we confine our analysis to whether it would seriously affect the fairness, integrity, or public reputation of the judicial proceedings to leave the non-constitutional error in Mr. Samora-Sanchez's sentence uncorrected.

Satisfying this fourth prong of the plain error test places a "demanding" burden on Mr. Samora-Sanchez. *Id.* at 737. We will not correct a non-constitutional error unless the error is "particularly egregious." *United States v. Gilkey*, 118 F.3d 702, 704 (10th Cir. 1997). Mr. Samora-Sanchez argues that his situation is similar to that of the defendant in *United States v. Trujillo-Terrazas*, 405 F.3d 814 (10th Cir. 2005), where we remanded a sentence with non-constitutional *Booker* error for resentencing. The defendant in *Trujillo-Terrazas* demonstrated that "a principled application of the post-*Booker* sentencing framework" would suggest a substantially different sentence than the actual sentence he received. *Id.* at 821. Mr. Samora-Sanchez contends that the application of the post-*Booker* sentencing regime, which uses advisory Guidelines in conjunction with the sentencing factors set forth in 18 U.S.C. § 3553(a), would also counsel a lower sentence than the one he actually received.

This position, however, ignores the emphasis that *Trujillo-Terrazas* placed

on the uniqueness of the defendant's situation. The defendant in *Trujillo-Terrazas* received a substantial increase in his sentence because a trifling prior conviction qualified as a crime of violence. *Id.* at 817 (defendant received a 16-level enhancement as a consequence of an arson that destroyed $35.00 worth of property). Thus, the defendant's sentence had the particularly egregious character necessary to satisfy the demanding standard of the fourth prong in non-constitutional cases. However, *Trujillo-Terrazas* emphasized that "run of the mill" non-constitutional cases where, for example, "a defendant pleads guilty and there is nothing remarkable about his criminal history," will rarely satisfy the fourth prong. *Id.* at 820. This is so even if the "defendant can demonstrate that the district court felt particular sympathy for him." *Id.* at 821.

Mr. Samora-Sanchez's case is one of these "run of the mill" cases. He pleaded guilty and he has not pointed out anything in the facts of his case or his criminal history that renders the application of the Guidelines inappropriate, let alone egregious. While it is true that the district court expressed sympathy for Mr. Samora-Sanchez's plight ("I wish there was something more I could do"), the district court also stated that giving Mr. Samora-Sanchez a lower sentence would treat him "differently than others in the same situation." Sent. Tr. 12, Aplt. Supp. Br., Attachment B. Allowing differential treatment of similarly situated defendants would run counter to the central purpose of the Guidelines, even as

revised in *Booker*. In rendering the Guidelines advisory, the remedial majority emphasized that it was "critically important" to adhere to the goal of the Sentencing Act to eliminate sentencing disparity. *Booker*, 125 S.Ct at 761. As we noted in *Gonzalez-Huerta*, allowing remands in non-unique cases of non-constitutional *Booker* error would suggest that the tens of thousands of sentences determined under the then-mandatory Guidelines called the fairness, integrity, or public reputation of judicial proceedings into question. 403 F.3d at 739. Accordingly, we **AFFIRM** Mr. Samora-Sanchez's sentence.

Entered for the Court,

Michael W. McConnell
Circuit Judge