# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 22, 2004

## STATE OF TENNESSEE v. CHRISTOPHER DEMOTTO LINSEY

**Appeal from the Circuit Court for Montgomery County**
**No. 49900006      John H. Gasaway, III, Judge**

---

**No. M2003-02420-CCA-R3-CD - Filed December 30, 2004**

---

The Appellant, Christopher Demotto Linsey, appeals from the judgment of the Montgomery County Circuit Court revoking his community corrections sentences. Linsey pled guilty to aggravated robbery, aggravated burglary, and theft of property over $1,000.00 and, for these convictions, he received an effective eight-year sentence to be served in the Community Corrections Program. On November 21, 2002, a warrant was issued, alleging that Linsey violated the terms of his community corrections agreement based upon new arrests for domestic assault and possession of illegal drugs for resale and of drug paraphernalia. Following a hearing, the trial court ordered revocation of his community corrections sentences, and further ordered that his sentence for aggravated robbery be increased to ten years and that he serve the remainder of his now effective ten-year sentence in the Department of Correction. On appeal, Linsey argues that (1) the evidence was insufficient to establish that a violation occurred, (2) the trial court, in resentencing him to ten years for aggravated robbery, failed to conduct a sentencing hearing as required by the 1989 Sentencing Act, and (3) his sentences are excessive in light of *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004). Finding no reversible error, the judgment of the trial court is affirmed.

### Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH, J., filed a separate concurring opinion, and THOMAS T. WOODALL, J., concurred in result only.

Collier W. Goodlett, Assistant Public Defender, Clarksville, Tennessee, for the Appellant, Christopher Demotto Linsey.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Elizabeth B. Marney, Assistant Attorney General; Arthur Bieber, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## Factual Background

On November 3, 1997, the Appellant was indicted for aggravated burglary and theft of property over $1,000.00 in case number 39381A. In April of 1998, he was placed on judicial diversion for a period of three years. The Appellant reported for his initial interview on May 18, 1998. Thereafter, he failed to report, and a violation warrant was issued on October 15, 1998, alleging that the Appellant failed to report valid employment, failed to provide his current address, failed to permit inspection of his residence, and failed to pay all required fees. In 1999, the Appellant was stopped "for a traffic citation and the outstanding warrant was served." He then reported for the months of April and May. On April 6, 1999, the Appellant submitted to a drug screen and tested positive for marijuana. Thus, a second violation warrant was issued on April 16, 1999, alleging that the Appellant "tested positive for Marijuana on a drug screen" and he "quit his job without notifying his State Probation Officer." On June 4, 1999, a violation hearing was held, and the Appellant "admitted his violation of probation and the court directed a status review in 90 days, with the stipulation that strict compliance to probation rules be maintained." On August 11, 1999, a third violation warrant was issued based upon the Appellant's new arrests for simple possession, driving on a revoked license, and contributing to the delinquency of a minor, his failure to report arrests, and his failure to pay all required fees. A fourth violation warrant was issued on September 9, 1999, which alleged two new arrests for aggravated robbery and simple possession. The Appellant did not report to his case officer after October 20, 1999. A fifth violation warrant was issued on July 21, 2000, based upon the Appellant's arrests for the aforementioned five offenses, his failure to report new arrests, his failure to report to his case officer, and his failure to permit inspection of his residence.

On October 13, 2000, the Appellant entered a plea of guilty to the 1997 charges of aggravated burglary and theft of property over $1,000.00 resulting in termination of judicial diversion. In exchange for his guilty pleas, he received concurrent three-year sentences in the Community Corrections Program. Also on October 13, 2000, the Appellant plead guilty to the 1999 charge of aggravated robbery, case number 49900006, and received a sentence of eight years, to be served concurrently with the aggravated burglary and theft sentences in the Community Corrections Program.

On February 2, 2001, a violation warrant was issued in case numbers 39381A and 49900006, based upon the Appellant's arrest for possession of a Schedule II controlled substance for resale. On April 24, 2002, the Appellant pled guilty to simple possession of cocaine and, therefore, admitted violating his community corrections agreement. At this time, the Appellant, who had been incarcerated in the county jail for 262 days, was given credit for time served and reinstated to the Community Corrections Program. A violation warrant was issued on November 21, 2002, alleging new arrests for domestic assault, possession of illegal drugs for resale and drug paraphernalia.

-2-

On July 23, 2003, a violation hearing was held. Following the conclusion of proof, the trial court found that the Appellant was in violation of his community corrections agreement and ordered that a presentence report be prepared for resentencing of the Appellant. On September 4, 2003, with regard to the Appellant's convictions for aggravated burglary and theft of property, the trial court revoked the Appellant's placement in the Community Corrections Program and ordered him to serve the remainder of his sentences in the Department of Correction. The court also revoked the Appellant's eight-year community corrections sentence for aggravated robbery and resentenced him to ten years in the Department of Correction. The Appellant filed a timely notice of appeal.

## ANALYSIS

### I. Revocation

First, the Appellant contends that the trial court abused its discretion in revoking his community corrections sentences based upon his arrest for possession of Schedule II and VI controlled substances with the intent to sell.[1] Specifically, he argues that

> the State failed to prove by a preponderance of the evidence either actual or constructive possession.
>
> He contends that the residence in which the drugs were found did not belong to him and his mere presence at the scene and association with those in possession of cocaine is not sufficient to find him in violation of his Community Corrections sentence.

If the trial court finds by a preponderance of the evidence that a defendant has violated a condition of his probation, the court has the authority to revoke the probation and reinstate the judgment as originally entered. Tenn. Code Ann. §§ 40-35-310 , -311(e), -36-106(e)(4) (2003). This court reviews a revocation of probation under an abuse of discretion standard. *State v. Stubblefield*, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997). This means that, if the record presents substantial evidence to support revocation, the trial court's action will be approved. *Id*. In other words, the evidence need only show that the trial judge has exercised "conscientious and intelligent judgment in making the decision rather than acting arbitrarily." *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995) (citing *Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980)). Thus, in reviewing the trial court's action, it is our obligation to examine the record and determine whether the trial court has exercised a conscientious judgment.

"Possession" may be either actual or constructive. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). Constructive possession requires proof that a person had "the power and intention at a given time to exercise dominion and control over [the weapon] either directly or through others." *Id*. (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). In essence, constructive

---

[1]The Appellant's case officer testified that he was "not sure what happened" to the domestic assault charge.

possession is the ability to reduce an object to actual possession. *State v. Brown*, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995). Obviously, proof that the accused had ownership or control over the property where contraband is kept may help resolve the question of constructive possession because it gives rise to an inference of knowledge and possession of the contraband. *See Brown*, 915 S.W.2d at 7-8; *State v. Jackson*, No. M1998-00035-CCA-R3-CD (Tenn. Crim. App. at Nashville, May 5, 2000). Nonetheless, it is not a prerequisite for conviction.

On November 6, 2002, Officer Frederick McClintock of the Clarksville Police Department executed a search warrant at 205 Charlemagne Boulevard. Upon entering the home, Officer McClintock mirandized the Appellant and Rebecca Beals, the owner of the residence and the Appellant's girlfriend. Later in a written statement, the Appellant admitted that he resided in the home with Beals.

During the search, McClintock found "multiple bags" of a Schedule VI substance in the house. The largest bag of cocaine, which weighed "over a pound, was found in the master bedroom closet. Also in the master bedroom, were five small bags of cocaine weighing approximately twenty-six grams. According to Officer McClintock, 700 grams of marijuana was also discovered inside the home. Moreover, McClintock found drug paraphernalia commonly used in the drug packaging process, including "stripped out" cigars, razor blades, glad plastic bags with "the corners of them cut out," and electronic digital scales. Additionally, Officer McClintock discovered $360.00 in cash behind the mat of a framed Titans' jersey, which belonged to the Appellant.

We conclude that the proof at the revocation hearing established by a preponderance of the evidence that the Appellant violated the terms of his community corrections agreement by possessing illegal drugs for resale. The Appellant resided in the home with his girlfriend, and they shared the master bedroom, where the majority of the drugs were located. The drug paraphernalia discovered in the home indicated that drugs were packaged for resale at the residence. Moreover, many of the drugs and items were found in plain view. This proof clearly establishes a violation of condition #9 of the Appellant's behavioral contract that he will obey the laws of the United States and not incur any new arrests. His flagrant abuse of his judicially granted liberty is indefensible. The primary goal of non-institutional punishment is to provide a period of grace in order to assist the rehabilitation of a penitent offender. *Burns v. United States*, 287 U.S. 216, 220, 53 S. Ct. 154, 155 (1932). Accordingly, we cannot conclude that the trial court abused its discretion in revoking the Appellant's community corrections sentences.

## II. Sentencing

### A. Ten-year Sentence for Aggravated Robbery

Next, the Appellant contends that the trial court erred by increasing his sentence for aggravated robbery from eight to ten years. He argues that the trial court failed to conduct a sentencing hearing pursuant to the 1989 Sentencing Act and failed to state its reasons for increasing his sentence on the record.

A trial court has the power, upon revocation of a community corrections sentence, to re-sentence a defendant to a period of incarceration up to the maximum for the offense originally committed, with credit for time already served in the Community Corrections program. Tenn. Code Ann. § 40-36-106(e)(4) (2003). The purpose of allowing the trial court to impose a new sentence is that the nature, circumstances, and frequency of the Appellant's violations may "warrant a different type of alternative sentence or incarceration." *State v. Ervin*, 939 S.W.2d 581, 583 (Tenn. Crim. App. 1996). The trial court may not, however, use the statute for the sole purpose of punishing a defendant for violating the community corrections sentence. *Id*.

When a trial court chooses to resentence a defendant to a sentence more severe than the original, the trial court must conduct a sentencing hearing pursuant to the principles of the Sentencing Reform Act. *State v. Crook*, 2 S.W.238, 240 (Tenn. Crim. App. 1998); *Ervin*, 939 S.W.2d at 583; *State v. Keith F. Batts*, No. 01C01-9210-CR-00326 (Tenn. Crim. App. at Nashville, Feb. 18, 1993); *State v. Timothy Lemont Wade*, No. 01C01-9303-CR-00092 (Tenn. Crim. App. at Nashville, Nov. 24, 1993). It is mandatory for the trial court to state on the record the reasons for imposing a new sentence. *State v. Gauldin*, 737 S.W.2d 795, 798 (Tenn. Crim. App. 1987). The Sentencing Reform Act provides that the record of the sentencing hearing "shall include specific findings of fact upon which application of the sentencing principles was based." Tenn. Code Ann. § 40-35-209(c) (2003); *see also* Tenn. Code Ann. § 40-35-210(f) (2003).

When an appellant complains of his sentence on appeal, this court conducts a *de novo* review coupled with a presumption that the trial court's sentencing determinations are correct. Tenn. Code Ann. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). However, this presumption is conditioned upon an affirmative showing that the trial court considered the relevant sentencing principles and all pertinent facts and circumstances. *Ashby*, 823 S.W.2d at 169. Regardless of whether the presumption of correctness is applied, the burden of showing the impropriety of the sentence is on the appealing party. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

The trial court, in increasing the Appellant's sentence for aggravated robbery to ten years, stated on the record:

> The presentence report indicates that Mr. Linsey's criminal history started when he was 18-years-old. He was convicted in May of 1994 in the Montgomery County Circuit Court of conspiracy to sell cocaine. That conviction was upon his plea of guilty, and he received a four year sentence, and was ordered to serve that sentence with community correction.
>
> Two months later he was charged with contributing to the delinquency of a minor. That matter came up in the Montgomery County General Sessions Court, and on November 10th 1994 he was convicted and - - as charged and was sentenced to a term of 11 months and 29 days.

The Court is uncertain how that sentence was satisfied, but the import of that is that he committed this offense two months after he was ordered to serve the four year sentence with community correction. That four year sentence, by the way, case number three three five eight eight.

He was also convicted in the general sessions court on that same date of November 10, 1994 of evading arrest; was sentenced to term of 11 months and 29 days.

Then in February of 1996 he was convicted again in the Montgomery County General Sessions Court of vandalism. He was sentenced to a term of 11 months and 29 days, and this sentence - - well I'm puzzled because the presentence report indicates that that sentence was ordered to be served consecutive to the four year sentence in three three five eight eight, but that could not have been done by general sessions court.

So, I am uncertain as to structure of that sentence, but, nevertheless the - - again, the import of this is that after he was sentenced to serve the four years with community correction he committed the offenses of contributing to the delinquency of a minor, evading arrest, which stemmed out of the same conduct, but then was later, and two years later, convicted of vandalism under case three nine three eight one.

The offense date was October the 2nd of 1997, which meant that for a fourth time he committed an offense while he was serving a community correction sentence. He was judicially diverted; and I don't understand how that happened. I do not understand how he was judicially diverted on April the 9th 1998 under case number three nine three eight one regarding an offense that occurred on October 2nd 1997 given the fact that he was at that point in time still serving a four year sentence, according to this presentence report, that was imposed on May the 25th 1994.

. . .

. . . And so, given this history the Court, based on its authority, resentences Mr. Linsey in case number four nine nine zero zero zero zero six, and the original eight year sentence that was imposed in that case is changed to a term of ten years, and he is ordered to serve that in confinement with the Department of Correction.

Impliedly, the trial court enhanced the Appellant's sentence based upon enhancement factor (2), the Appellant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish th appropriate range. Tenn. Code Ann. § 40-34-114 (2) (2003). The record supports application of this factor. Not only does the Appellant's record indicate a criminal history prior to his placement in the Community Corrections Program, but since such placement he has

continued to violate the law on numerous occasions. *See State v. Dale Goodwin*, No. W2001-0-212-CCA-R3-CD (Tenn. Crim. App. at Jackson, Dec. 14, 2001), *perm. to appeal denied*, (Tenn. 2002) ("[F]acts which have been developed between the time a defendant is initially sentenced to community corrections, and the time that the sentence is subsequently revoked, may be considered in applying enhancement factors and increasing a sentence"). When there are enhancement factors and no mitigating factors, there is no presumptive sentence and the court may sentence above the minimum in the range. Tenn. Code. Ann. § 40-35-210(d). Based upon the Appellant's lengthy criminal history, the trial court was clearly justified in imposing a sentence of ten years for aggravated robbery.

## B. Blakely v. Washington

The Appellant amended his brief to argue that his sentences are excessive because the trial court improperly applied enhancement factors in light of *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004).[2] First, any sentencing challenge available to the defendant under *Blakely* is now waived because the defendant did not object at trial to what he now contends is a constitutionally invalid sentencing scheme. Tenn. R. App. P. 36(a). In *Blakely*, the Supreme Court did not pronounce a new rule of law. Rather, it only provided an explanation of the rule previously expressed in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), with regard to the term "statutory maximum." Clearly, the defendant could have raised this issue under *Apprendi* at the trial level as did the defendant Blakely; however, this was not done. In *United States v. Cotton*, 535 U.S. 625, 631-34, 122 S. Ct. 1781, 1785-87 (2002), the Supreme Court held, after its decision in *Apprendi*, that the defendant's claim of right to a trial and finding by a jury on a fact used to enhance the defendant's sentence was forfeited because it was not raised at trial. Moreover, the Supreme Court has held

> (1) the *Apprendi* rule is *not* a substantive rule that alters the range of conduct or the class of persons that the law punishes; rather, it is a procedural rule that affects only the manner of determining the defendant's culpability, and (2) the *Apprendi* rule is *not* a "watershed rule of criminal procedure" that implicates the fundamental fairness and accuracy of criminal proceedings.

*People v. George Carl Sample*, No. C044445 (Cal. Ct. App. Sept. 13, 2004) (quoting *Schriro v. Summerlin*, __ U.S. __, 124 S. Ct. 2519, 2523-24 (2004)). Accordingly, the *Blakely* issue is waived.

---

[2]We are constrained to note that the Appellant argues that *Blakely* applies to all three of his felony convictions. However, the Appellant was not resentenced for his convictions for aggravated burglary and theft; he was merely revoked from his three-year sentences previously imposed pursuant to a plea agreement. Moreover, the Appellant was sentenced to three years for aggravated burglary, the minimum sentence for a class C felony. Thus, any *Blakely* argument would only apply to the increase in his sentence to ten years for aggravated robbery.

Additionally, this case illustrates another facet of *Blakely*. To increase a defendant's sentence following revocation of a community corrections sentence now requires a personal waiver or a finding of prior criminal history unless a jury is to be empaneled, which could potentially require a mini-trial of the original charge(s).

Nonetheless, overwhelming evidence was presented at the resentencing hearing which established that the Appellant had a prior criminal history, thus permitting application of enhancing factor (2). *See* Tenn. Code Ann. § 40-35-114(2). As the Supreme Court stated in *Apprendi* and reiterated in *Blakely*, the Sixth Amendment of the United States Constitution permits the fact of a prior conviction to be used to increase a defendant's sentence without that fact having been tried before a jury and proved beyond a reasonable doubt. *Blakely*, 542 U.S. at __, 124 S. Ct. at 2537; *Apprendi*, 530 U.S. at 490, 120 S. Ct. at 2362-63. The Appellant's extensive record of prior convictions, in our opinion, fully justifies a ten-year sentence.

## CONCLUSION

Based upon the foregoing, we conclude that the trial court did not abuse its discretion in ordering revocation of the Appellant's community corrections sentences and resentencing him to ten years for his aggravated robbery conviction. The judgment of the Montgomery County Circuit Court is affirmed.

_____
DAVID G. HAYES, JUDGE