LUCERO, Circuit Judge,
dissenting.
I join Part V of Judge Briscoe’s dissenting opinion. It is my judgement that the Court’s remand of Fanfan for further proceedings precludes the approach taken by my esteemed colleagues speaking in the majority. If the Court had concluded that the fourth prong of Olano could not be met, there would have remained no basis upon which to remand Fanfan’s case for further proceedings allowing the government, and potentially the defendant, the benefit of Booker’s remedial holding. This very action by the Court saps any intellectual vigor from the majority’s categorical decision to preclude exercise of our prudential obligations under Booker/Fanfan. I agree with the dissent that when there was no opportunity for the defendant or the government to develop a record relevant to post-Booker discretionary sentencing, that even in non-constitutional cases fundamental fairness is clearly implicated.
I also agree with much of the analysis of my other dissenting colleagues as to the third Olano factor as ably expressed by Judge Briscoe. Because defendants like Gonzalez-Huerta were sentenced under a system in which the parties and the court were laboring under a fundamental mistake of law, it is difficult, if not impossible, for us to assess what a district court would have done in the proper exercise of its discretion. That flawed legal framework effectively eliminated any incentive litigants might have had to present evidence and make objections that would have been relevant to the exercise of a district court’s discretion. With regard to each of these considerations, I agree with Judge Bris-coe’s dissent.
Where I respectfully depart from the reasoning of both the majority and Judge Briscoe is with the premise that analyzing whether substantial rights have been affected by a sentence imposed in plain error turns on who has the burden to demonstrate “that the error must have affected the outcome of the district court proceedings.” United States v. Cotton, 535 U.S. 625, 632, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). Like Judge Briscoe, the Sixth Circuit responded to the burden shifting difficulty by presuming that defendants were prejudiced by Booker error. United States v. Barnett, 398 F.3d 516, 526-527 (6th Cir.2005) (presuming prejudice because “the inherent nature of the error made it exceptionally difficult for the defendant to demonstrate that the outcome of the lower court proceeding would have been different had the error not occurred”). By contrast, like the majority, the Eleventh Circuit leaves the burden on the defendant to prove prejudice, and concludes that a defendant must lose where it is unclear from the record whether he was prejudiced. United States v. Rodriguez, 398 F.3d 1291, 1300 (11th Cir.2005) (“[I]f the effect of the error is uncertain so that we do not know which, if either, side it helped the defendant loses.”).
*762 I would follow neither extreme; rather, I would adopt the approach of the Second Circuit and the Seventh Circuit. That approach was well described by Judge Newman in the panel decision in United States v. Crosby, 397 F.3d 103 (2d Cir.2005):
“Some might suppose that the only choice for an appellate court in a case presenting a procedural error in imposing a sentence is between disregarding the error and requiring a new sentencing. However, the choice is not so limited. Section 3742(f) provides: ‘If the court of appeals determines that — (1) the sentence was imposed in violation of law ..., the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate.’ ... [W]e conclude that the ‘further sentencing proceedings’ generally appropriate for pre-Booker/Fanfan sentences pending on direct review will be a remand to the district court, not for the purpose of a required resentencing, but only for the more limited purpose of permitting the sentencing judge to determine whether to re-sentence, now fully informed of the new sentencing regime, and if so, to resen-tence.”
Id. at 117; see also United States v. Pala-dino, 401 F.3d 471 (7th Cir.2005) (“what an appellate court should do in Booker cases in which it is difficult for us to determine whether the error was prejudicial is, while retaining jurisdiction of the appeal, order a limited remand to permit the sentencing judge to determine whether he would (if required to resentence) reimpose his original sentence.”).
Where the record at trial was developed under a system operating under a mistake of law as to the exercise of a district court’s discretion, and where analysis of prejudice based on that error can be no more than an educated guess, we can fulfill our obligation under “plain error review” only by availing ourselves of the full information a limited remand to the district court would provide. Not only is a limited remand the most pragmatic approach, I would agree with the Second Circuit that it is within our appellate power: “since an appellate court has the authority to remand for resentencing, absent harmless error or unpreserved error that does not satisfy plain error analysis, we think an appellate court necessarily has the lesser power to remand for a determination of whether to resentence, and to permit re-sentencing.” Crosby, 397 F.3d at 117.
What recommends the approach taken by the Second and Seventh Circuits is that it recognizes the likely impossibility of proving prejudice based on a record created in a pre-Booker sentencing proceeding, but does not purport to solve that injustice by imposing the same impossibility on the government. Rather, it leaves the burden on the defendant as is required by plain error review, but permits the defendant to construct a relevant record and allows the district court to weigh the evidence in the exercise of its discretion. Because the sentencing court is more appropriately the venue than is ours to conduct the fact-finding necessary to evaluate any new evidence offered by the parties, and is most capable of determining whether in light of this evidence and its new discretion it would have imposed a different sentence, remand is necessary.
A district court’s determination that in the exercise of its discretion it would have imposed a non-trivially different sentence conclusively demonstrates that the original sentence affects a defendant’s substantial rights, and thus satisfies the third Olano factor. Moreover, for the reasons stated in Judge Briscoe’s dissent, a sentencing judge’s decision that he would have imposed a non-trivially different sentence es *763 tablishes that the error plaguing the original sentence seriously affects the fairness, integrity, or public reputation of judicial proceedings. Conversely, any error in selecting the original sentence would not be prejudicial if the sentencing court determines on remand, after reviewing the parties’ proffers of evidence and argument, that it would have imposed essentially the same sentence under an advisory Guidelines regime.
In opposition, the majority complains that the Second Circuit approach collapses the third and fourth Olano factors, contrary to Supreme Court precedent. (Slip op. at 16.) (“if these courts find the third prong satisfied, they conclude that the fourth prong is met as a matter of course”). In this claim, the majority is mistaken. What occurs “as a matter of course” under a limited remand is that if the district court determines that it would impose a different sentence, then there is no longer any doubt as to whether the fairness of the proceedings is seriously affected. I would hold to the principle that where a defendant is illegally sentenced and prejudice is established by a district court’s conclusion that it would have imposed a non-trivially different sentence, then our discretion under the fourth prong is effectively at an end. The only reasonable conclusion that can follow from such a state of affairs is that the fundamental fairness and integrity of the courts are clearly implicated. This conclusion does not “collapse” the third and fourth prongs.
Applying this approach to the facts of this case, I would hold that the record before us is insufficient to determine with confidence whether Gonzalez-Huerta was prejudiced by the district court’s plainly erroneous application of the Sentencing Guidelines. Gonzalez-Huerta was sentenced at the very bottom of the Guidelines range. Although we can infer that the district court did not wish to impose a higher sentence, we cannot say whether the court would have imposed a lower sentence in the exercise of its discretion. Adding to that uncertainty is the fact that Gonzalez-Huerta declined to offer any mitigating evidence, not captured by the pre-sentence report. He apparently would have done so under the present discretionary regime, as he desired to argue that the presence of a “Fast Track” program in other jurisdictions allows defendants there “to receive substantially lower sentences than are available to defendants in jurisdictions without such a program.” Aplt. Supp. Br. at 10. He informs us on appeal that, had his sentencing occurred under the post -Booker sentencing regime, he would have argued that the district court should impose a lower sentence to “reduce the disparity produced by ‘Fast Track.’ ” Id. Gonzalez-Huerta received a sentence at the very bottom of the Guidelines range, the district court did not have any evidence, before it other than that contained in the PSR, and Gonzalez-Huerta presents an argument on appeal that he would have made to influence the district court’s discretion. For these reasons, I would remand this case so that the district court may, on consideration of any additional evidence or arguments that the defendant or the government may proffer, determine whether to resentence in light of Booker.
The division on this court over the proper approach to Booker cases pending direct review is replicated among the various circuit courts. This wide ranging circuit split results in the disparate treatment of criminal defendants throughout the nation. Such uneven administration of justice cries out for a uniform declaration of policy by the Supreme Court.