EBEL, Circuit Judge,
concurring.
I agree with the majority’s decision to affirm Gonzalez-Huerta’s sentence under the fourth prong of the Olano[1] plain-error test and therefore I join Sections I, IIA, IIB, IID, and III of the majority opinion. However, I disagree with the majority’s analysis and conclusion reached under the third prong of the Olano plain-error analysis (Maj. op. sections IIC), and accordingly I do not join those sections of the majority opinion. Regarding the prejudice-prong analysis, I believe that Judge Briscoe got it right, and accordingly, I join Section IV of her concurrence. Regarding the fourth prong of the Olano plain-error analysis, as noted above, I join Section HE of the majority opinion. I join Part II of Judge Hartz’s concurrence. Finally, I add this concurring opinion to offer some additional analysis applicable to the fourth-prong analysis.
When an appellant meets the first three prongs of the plain-error analysis, as Gonzalez-Huerta has in this case, “an appellate court may then exercise its discretion to notice a forfeited error, but only if ... the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.” United States v. Cotton, 535 U.S. 625, 631, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (quotation omitted). I agree with the majority opinion that the plain error in this case does not seriously affect the fairness, integrity or public reputation of judicial proceedings, but I write separately to discuss the specific factors that lead me to that conclusion.
Judge Hartz has addressed the fourth prong in some detail in his concurrence, and I agree with his reasoning.[2] The majority opinion, and Judge Hartz’s concurrence, appropriately note that the sentencing guidelines’ purpose was to make sentencing more uniform and, thus, more fair. They observe, therefore, that it would not generally advance the fairness, integrity or public reputation of judicial proceedings, in a systemic sense, to remand individual cases for resentencing after United States v. Booker, — U.S. -, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), where the sentence already imposed falls within the range established by those guidelines. Rather, a sentence within the applicable guideline range generally represents a sentence within the national norms adopted for such similarly convicted defendants.
Building on this reasoning, I would suggest at least three non-exclusive factors that this court should consider in determining whether to notice and correct Booker error that has affected an appellant’s substantial rights.
*743 First, was the plain error constitutional error? This court applies a less restrictive plain-error analysis whenever an appellant urges a constitutional error. See United States v. Brown, 316 F.3d 1151, 1155 (10th Cir.2003). If there had been constitutional error here that affected Gonzalez-Huerta’s sentence, it would be much more likely to cast judicial proceedings in disrespect and would be much harder for us to uphold. See, e.g., United States v. McDaniel, 398 F.3d 540, 549 (6th Cir.2005) (holding Sixth Amendment Booker, error would diminish fairness of criminal sentencing scheme). But in this case the district court’s error in treating the sentencing guidelines as mandatory rather than only advisory was not constitutional error.
The second factor I would consider is whether an appellant’s sentence falls within the guideline range, now viewed as advisory, for the defendant’s particular conduct and criminal history. Unlike a guilt/innocence determination, which is generally an “either-or” proposition, sentencing is instead “the choice of a point within a range established by Congress.” United States v. Paladino, 401 F.3d 471, 481-82 (7th Cir.2005). In this case, the district court imposed a sentence that fell within the applicable guideline range. There is, then, a comfort level here because Gonzalez-Huerta received a sentence similar to the sentence most similarly historied defendants in the United States would have received for the crime for which he was convicted.[3] See Brown, 316 F.3d at 1161.
Third, I would consider whether there was evidence in the record or proffered that would suggest that, if we remanded this case for resentencing, the district court would likely impose a significantly different sentence.[4] See id. at 1163. It *744 seems to me that one aspect of whether the defendant received an unfair sentence is whether the sentence would likely change to a significant degree if he were returned to the district court for discretionary resentencing. On this record, however, there is no such evidence, nor is any such evidence proffered.
In this case, then, these three fourth-prong Olano factors all cut against Gonzalez-Huerta. There was no constitutional error; Gonzalez-Huerta’s sentence fell within the applicable guideline range, indicating he received the same sentence that other similarly convicted defendants would have received, so there was nothing unfair about his sentence from a societal perspective; and there is no evidence in the record or proffered to suggest that the district court, on remand, able to exercise greater discretion, would impose a significantly different sentence. Thus, there is no showing that even from the defendant’s unique perspective there was anything unfair about the sentence he received. For these reasons, I would conclude that this court need not notice the district court’s sentencing error, in treating the guidelines as mandatory, because the error does not seriously affect the fairness, integrity or public reputation of judicial proceedings in this case.

. United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

. I agree with both the majority opinion and with Judge Hartz that we cannot conflate the third and fourth prongs of the plain-error analysis. Rather, we must address these two inquiries separately.

. Admittedly, this will be true of most sentences that fall within the previously mandatory guideline range. Nevertheless, it is important to consider this factor, even though it will support denying relief in most plain-error cases. And this factor alone is not disposi-tive. The fourth prong of the plain-error analysis is, at its core, a discretionary prong, yet one that places a heavy burden on the party seeking to invoke it. Whether a sentence is within a societally approved range is a strong factor, but only one factor among several that we should consider in deciding whether to exercise our discretion to grant plain-error relief.

. While this factor overlaps, to some degree, with the third prong's analysis, it is also relevant here under the fourth prong. Nevertheless, whether a defendant can show that he would likely receive a substantially lighter discretionary sentence on remand seems to me to be a necessary component of any fairness evaluation under the fourth prong. And, unlike the third prong's analysis, here we need not make the binary determination of whether or not the appellant was prejudiced by the plain error, we need not worry about blurring the distinction between plain and harmless error, and we need not engage in backward-looking speculation of an unknowable judicial mindset. Instead, at the fourth prong, we can apply our own objective analysis to determine whether a different sentence under a discretionary scheme is likely. Further, this factor does not drive the fourth-prong analysis like its does the third prong. Again, this is but one of several factors that we will consider before determining whether or not to exercise our discretion to notice and correct plain error. If prejudice is uncertain, we can simply take that uncertainty into account in deciding how much weight to give this factor under the fourth-prong analysis.
In this case, I did not find the absence of such evidence sufficient to override the defendant’s showing of prejudice under the third prong because he made a sufficient showing of prejudice in light of his sentence being at the very bottom of a sentencing range believed by the judge to be a mandatory range, particularly when he had little incentive either to object to the sentence or to put on mitigating evidence given the prevailing case law. In the fourth-prong analysis, I would look to see whether, notwithstanding that disincentive, there is anything in the record or proffered that would suggest a substantially different sentence if we were to remand.