[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No. 04-15738
Non-Argument Calendar

———————————————

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 30, 2005
THOMAS  K. KAHN
CLERK

D. C. Docket No. 02-00481-CR-T-23-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID LEE GAINER, SR.,
DAVID LEE GAINER, JR.,

Defendants-Appellants.

———————————————

Appeals from the United States District Court
for the Middle District of Florida

———————————————

**(September 30, 2005)**

Before CARNES, HULL and WILSON, Circuit Judges.

PER CURIAM:

This opinion involves the appeals of David Lee Gainer, Jr. and his father David Lee Gainer, Sr., who were jointly tried and convicted.

Gainer, Jr. was convicted of: one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; eleven counts of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2; one count of conspiracy to commit bank fraud as an employee of a federally insured bank through solicitation, demand, and acceptance of commissions or gifts for procuring loans, in violation of 18 U.S.C. § 371; and one count of receipt of commissions or gifts for procuring a loan as an employee of a financial institution, in violation of 18 U.S.C. § 215(a)(2). He received concurrent sentences of 46 months on each count.

Gainer, Sr. was convicted of one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and seven counts of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2. He received 21-month concurrent sentences.

## I.

Gainer, Jr. contends that the district court committed a <u>Batson</u> error in allowing the government to use a peremptory challenge to strike a Hispanic prospective juror, Ida Cesareo, on the basis of her race. The government contends that Gainer, Jr. failed to make a prima facie showing of discriminatory intent. The

government also contends that it offered a sufficient, race-neutral reason for striking Cesareo—that Cesareo, who spoke English as a second language, did not understand English well enough to follow the case, which involved complex banking terminology. We need not address the prima facie case issue because it is clear to us that the district court did not clearly err in crediting the government's race-neutral reason for striking Ceasaro.

Before trial, during <u>voir</u> <u>dire</u>, the district court judge read the indictment and asked the prospective jurors whether they understood it. Prospective juror Ida Cesareo replied that she did not "understand a lot of the abbreviations." She told the judge that she had "lost track of who was who" and that she spoke English as a second language. She indicated, however, that she could hear and understand the judge's questions and that she understood English well enough to follow the proceedings. Cesareo later explained the she was born in Puerto Rico but had lived in the United States for more than twenty years and had worked as a certified nursing assistant. The judge again asked if she felt like she was following the proceedings and understanding what was going on, and she said that she was.

Upon further inquiries, Cesareo stated that she "had a bankruptcy a year and a half ago," and the following exchange occurred:

District Court:     Here in this building?

3

| | |
|---|---|
| Cesareo: | No. |
| District Court: | Is it closed? |
| Cesareo: | It is close around here. |
| District Court: | I see.  Now, is the case closed now?   Is it over? |
| Cesareo: | Yes, it is over. |
| District Court: | And when did it get over? |
| Cesareo: | Well, it is—I am still paying bankruptcy. |

The government later used a peremptory challenge to strike Cesareo from the jury.  Gainer, Jr. raised a <u>Batson</u> challenge to the strike.  The government responded to that challenge by asserting that it was "striking Ms. Cesareo because she already expressed to the [c]ourt difficulty in understanding the indictment as read.  And her English spoken in court was broken."

Although, as the district court noted, other venire members had probably experienced similar difficulty in making sense of the indictment, Cesareo was the only juror who expressed confusion over what she described as the "abbreviations" used in the indictment.  The court noted that "her use of the term 'abbreviations' was not clear to me.  Her pronunciation of the word was not clear to me.  Nor did I understand exactly how the term 'abbreviations' applied to what was in the indictment."

The district court noted that prospective juror "Cesareo herself raised concerns about her understanding, although she receded somewhat from that when questioned;" that juror "Antonio Latour, born in Cuba . . . remains on the venire, unchallenged by the United States;" and that there was no "indication certainly in the behavior of the United States or in the contents of these proceedings to suggest that [the Batson] objection was meritorious, although the opportunity to make it is presented and hard, I know, to resist."

"A district court's findings regarding whether a peremptory strike was exercised for a discriminatory reason largely involve credibility determinations and are therefore entitled to great deference. Thus, we review a district court's findings in this respect only for clear error." United States v. Novaton, 271 F.3d 968, 1001 (11th Cir. 2001) (citation and quotation marks omitted). We are to accord "great deference" to the court's finding that the government's explanation for the strike was credible. Stewart, 65 F.3d at 925. Here that deference is unnecessary; there was no error, clear or otherwise. Ms. Cesareo was not fluent in the English language and she demonstrated language-based difficulty understanding terms in the indictment and communicating with the court. This was a banking fraud case. It would be hard enough for jurors proficient in English to understand the allegations, evidence, and instructions. Under these

5

circumstances, the reason the government proffered for striking her was not only plausible but compelling.

## II.

Gainer, Jr. also contends that his Fifth Amendment rights were violated when the government cross-examined him about what he describes as his post-arrest silence. Almost three years before he was arrested or indicted, two police officers and two officials from SouthTrust Bank questioned Gainer, Jr. about his suspected fraudulent activities. During this meeting, Gainer, Jr. signed a written statement confessing that he had received a bribe and had committed the acts underlying the crimes that were later alleged in counts thirteen (conspiracy to commit bank fraud as an employee of a federally insured bank through solicitation, demand, and acceptance of commissions or gifts for procuring loans) and fourteen (receipt of commissions or gifts for procuring a loan as an employee of a financial institution) of the indictment. When questioned on direct about his written confession, Gainer, Jr. testified that he was forced to make the statement and that the police officers interrogating him were "very rough, as far as vocal, with [him]." He explained that he had agreed to write the statement in order to avoid being arrested.

On cross-examination the prosecutor asked Gainer, Jr. whether, immediately

after he made the confession (before he was arrested), he contacted the police to protest this situation or called his lawyer to report that he had been coerced into confessing to a federal crime. Gainer, Jr. said that he had not. He also admitted that when FBI agents contacted him several months later (still before he was arrested), he did not explain that he had been forced to confess to criminal activities.

The prosecutor concluded by asking, "And, in fact, the first time that you ever advised anyone with the United States or Bradenton Police or South Trust Bank that this had been coerced from you under these horrifying circumstances was a good year after you'd been indicted for these crimes, is that correct?" "Yes," Gainer, Jr. replied.

Then, during closing argument, the prosecutor emphasized that Gainer, Jr. had not promptly reported to authorities his allegation that he had been forced to confess to crimes he had not committed. The government reminded the jurors of the fact that Gainer, Jr. did not assert that he had been coerced to confess "until a year after he had been indicted in this case" and "that was the first time the government or SouthTrust ever heard the claim that he was forced or intimidated into [confessing]."

Gainer, Jr. contends that the district court should have acted to prevent

questioning about his silence following the indictment and should have stopped the government from commenting on this testimony during its closing argument. He also contends that the comments on his post-arrest silence violated his due process rights and improperly shifted the burden of proof to the defense on counts thirteen and fourteen of the indictment.

At trial, however, Gainer, Jr. did not object to this line of questioning or to the prosecutor's comments in closing argument. Accordingly, our review is only for plain error. See United States v. Olano, 507 U.S. 725, 731, 113 S. Ct. 1770, 1776 (1993). Plain error occurs only when the following requirements are met: (1) the district court committed "error," (2) the error was plain, and (3) the error "affect[s] substantial rights." Id. at 732, 113 S. Ct. at 1776. If all of these criteria are satisfied, then we should correct the plain error only if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Id. at 736, 113 S. Ct. at 1779 (citation and quotation marks omitted).

A defendant cannot be questioned about post-arrest silence after he has asserted his right to remain silent. See Doyle v. Ohio, 426 U.S. 610, 618, 96 S. Ct. 2240, 2245 (1976) (explaining that Miranda warnings create an implicit assurance that a defendant's "silence will carry no penalty"). The reason is that "it would be fundamentally unfair and a deprivation of due process to allow the arrested

8

person's silence to be used to impeach an explanation subsequently offered at trial." Id. It is permissible, however, to question a defendant about his pre-arrest silence. See Jenkins v. Anderson, 447 U.S. 231, 240, 100 S. Ct. 2124, 2130 (1980).

The prosecutor's questioning focused primarily on Gainer, Jr.'s pre-arrest silence and his failure to assert promptly after he confessed that he had been coerced into doing so. That is a proper basis for impeachment. Those questions and the argument based on them did not constitute error. See Jenkins, 447 U.S. at 240, 100 S. Ct. at 2130.

The prosecutor's question about whether the first time Gainer, Jr. notified the government that his confession was coerced was "a good year after [he had] been indicted" did refer to a period of time following his arrest (he was arrested two days after being indicted). Therefore, that question and the reference to the facts brought out by it was a Doyle violation—assuming, as we will, that Miranda warnings were given following the arrest. We have held, however, that "[a] Doyle violation is harmless if the error had no substantial and injurious effect or influence in determining the jury's verdict." United States v. Miller, 255 F.3d 1282, 1285 (11th Cir. 2001) (citations and quotation marks omitted).

This Doyle violation does not amount to plain error because it does not meet

the third requirement of the plain error test, which is "anything but easy" to satisfy. United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005). To pass that test, the defendant must show that error "affected the outcome of the district court's proceedings." United States v. Cotton, 535 U. S. 625, 632, 122 S. Ct. 1781, 1786 (citation and quotation marks omitted).

Most of the prosecutor's questions concerning Gainer, Jr.'s failure to inform anyone that his confession was coerced referred to the pre-arrest time period. Only one question mentioned his silence after his arrest. Given the context of the questions and the argument based on them, Gainer, Jr. has not met his burden of "show[ing] that the error actually did make a difference." Rodriguez, 398 F.3d at 1300.

### III.

Finally, Gainer, Jr. and Gainer, Sr. both contend that they were sentenced in violation of Booker. Each of them made timely Blakely objections, Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), at the time of sentencing. We review the issue but will reverse only for a harmful error. See United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005). The government bears the burden of demonstrating that any error is harmless. Id.

Applying the guidelines in a mandatory fashion, the district court increased

10

Gainer, Jr.'s and Gainer, Sr.'s guideline range based upon facts that were neither alleged in the indictment nor submitted to the jury for proof beyond a reasonable doubt. The government concedes that it cannot show that the district court's mandatory application of the guidelines was harmless and that Gainer, Sr. and Gainer, Jr. are entitled to resentencing. We agree.

The convictions of both appellants are AFFIRMED, but the sentence of each appellant is VACATED, and the cases are REMANDED for resentencing in compliance with the <u>Booker</u> decision.