OPINION
{¶ 1} This is an appeal of certain orders issued by the Common Pleas Court of Delaware County arising out of a divorce between the parties to this appeal.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The parties were originally from India and were married in New York city on November 29, 1997.
 {¶ 3} One child, Jasmohan S. Bawa, was born on October 30, 1999.
 {¶ 4} The divorce was filed on September 18, 2003, with a counterclaim filed thereafter.
 {¶ 5} With respect to the division of debts and assets, the court made the following orders:
 {¶ 6} "The real estate of the Parties located at 3930 Bainbridge Mills Drive, Powell, Ohio shall be sold at such price, using such agents, in such manner and on such terms as the Parties may agree. The proceeds of the sale shall be paid as follows:
 {¶ 7} "(i) to the usual costs of sale;
 {¶ 8} "(ii) to the first mortgage on the premises to Fifth Third Bank;
 {¶ 9} "(iii) a sum to the Husband equal to the amount that the balance of the Fifth Third Mortgage on December 1, 2004, $206786.75 [SIC], is reduced until sale (an amount in excess of $900.00 per month);
 {¶ 10} "(iv) to the Parties equally, adjusted by the amount that either Party may then be in arrears on any obligation under this Decree.
 {¶ 11} Until the house is sold, the Wife shall have exclusive possession thereof. The Husband shall pay the mortgage payment, real estate taxes that are billed and due before closing, insurance and ordinary maintenance and repairs on the premises until sale."
 {¶ 12} Spousal support provided:
 {¶ 13} "The Husband be awarded the 2002 Mitsubishi Gallant.
 {¶ 14} "The Wife be awarded the 1992 Chrysler LeBaron.
 {¶ 15} "Each Party be awarded the other items of tangible personal property currently in his or her respective possession except the Husband shall be awarded the following items in the possession of the Wife: the two tv side stands; the child player, stereo system and 5 speakers; king size bed and mattress; dresser with mirror; entertainment center; 2 end tables; coffee table; lawn mower; blower; trimmer; lawn tools in garage; electric tools in garage."
 {¶ 16} The Decree further stated:
 {¶ 17} "The Wife shall have a Qualified Domestic Relations Order (QDRO) in the Sogeti, 401(k), Profit Sharing Plan. The retirement benefit shall be divided into two equal shares, one for the Husband and one for the Wife. The division shall be made based on the value in the plan after the profit sharing contribution for the year 2004 is made. The Order shall not interfere with the timing or optional modes of settlement that the Husband may have under such plan. The Wife shall have all the optional modes of settlement as to her share that the Husband has with respect to his share of such benefits. If the plan cannot be divided into shares until the Husband is fully vested, then the Wife's share will fully participate in proportion to the value of the Wife's share in any investment gains or losses until the plan can be divided. The Wife will not participate in any further employer contributions after the profit sharing contribution for the tax year 2004. If the QDRO is prepared in a timely manner, the Wife's share shall fully participate in any investment gains or losses until the QDRO is in place. However, if there is a delay in preparing and filing the QDRO and that delay is due to conduct of the Husband and there is an investment loss during the period of the delay, then the Wife's 1/2 interest shall be determined based on the value of the account as of the date hereof.
 {¶ 18} "The Wife shall have a Qualified Domestic Relations Order (QDRO) in the Cysive 401(k) Plan. The retirement benefit shall be divided into two equal shares, one for the Husband and one for the Wife. The Order shall not interfere with the timing or optional modes of settlement that the Husband may have under such plan. The Wife shall have all the optional modes of settlement as to her share that the Husband has with respect to his share of such benefits. If the QDRO is prepared in a timely manner, the Wife's share shall fully participate in any investment gains or losses until the QDRO is in place. However, if there is a delay in preparing and filing the QDRO and that delay is due to conduct of the Husband and there is an investment loss during the period of the delay, then the Wife's ½ interest shall be determined based on the value of the account as of the date hereof.
 {¶ 19} "The Husband be awarded the following items of intangible personal property: Fifth Third Bank, checking account, #174, Husband; Fifth Third Bank, checking account, #9285, Husband; Fifth Third Bank, checking account, #9910, joint; Bank Of America, checking account, joint, #0762; Bank America, account #1090; 1/2 T.D. Waterhouse investment, $10,100.08 @ March 31, 2004; Discover ins., on life of Husband, face amount $50,000.00 (subject to paragraph 8 hereof); Sogeti ins., on life of Husband, face amount $250,000.00 (subject to paragraph 8 hereof)
 {¶ 20} "The Wife be awarded the following items of intangible personal property: 1/2 T.D. Waterhouse investment, $10,100.08 @ March 31, 2004; Computershare stocks, $3,325.00 @ November 23, 2004; Under Age 17 Child Credit Check, $400.00; 2003 Tax Refunds, $364.00 $320.00.
 {¶ 21} "The Parties shall hold the Fifth Third, checking account #5353, custodial account for Jasmohan, $236.57 as of 3/27/03, as custodians for Jasmohan.
 {¶ 22} "The Husband pay the following debts of the Parties and hold the Wife harmless thereof:

"Creditor Purpose of Debt Balance Monthly
 or collateral Payment
"Fifth Third Bank first mortgage, residence 218,280.80 2,040.50
"(subject to paragraph 4 hereof)
"Capital One Auto Mitsubishi Gallant 7,891.89@ 8/16/04 295.73
 Finance
"Citibank Husband 4,840.00 @ 9/8/04 100.00
"Discover Husband 3,882.06 @ 9/19/04 100.00
"Bank of America, Husband 4,591.55 @ 9/19/04
"American Express Husband 51.06 @ 9/6/04
"Husband's sister 2,250.00
"1/2 State of California 2000 taxes 1,480.00+
"any other debt that the Husband has incurred
 {¶ 23} The Wife pay the following debts of the Parties and hold the Husband harmless thereon:
"Creditor Purpose of Debt Balance Monthly
 or collateral Payment
"1/2 State of 2000 taxes 1,480.00+
 California
"Wife's family 18,000.00
"any other debt that the Wife has incurred."
 {¶ 24} The Husband shall deliver all the jewelry that was supposed to be placed in a safety deposit box to the Wife within 10 days of the date hereof."
 {¶ 25} Spousal support provided:
 {¶ 26} "The Husband shall pay spousal support of $1,500.00 per month effective with the first day of the first month following the month in which the closing of the sale of the Parties' real estate takes place. Spousal support shall reduce to $1,000.00 per month effective September 1, 2006 for a period of 12 months."
 {¶ 27} As to the child, the Decree stated:
 {¶ 28} "The Wife be designated the residential parent and legal custodian of the child for school placement purposes provided the Wife's residence is in Franklin, Delaware or surrounding counties."
 {¶ 29} The Court also provided that each party was to pay their respective attorney fees.
 {¶ 30} Appellant raises seven Assignments of Error:
 ASSIGNMENTS OF ERROR {¶ 31} "I. THE TRIAL COURT ERRED IN ITS DISTRIBUTION OF THE PARTIES ASSETS AND DEBTS.
 {¶ 32} "II. THE TRIAL COURT ERRED IN ITS AWARD AND DURATION OF SPOUSAL SUPPORT.
 {¶ 33} "III. THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING APPELLANT TO BE THE OBLIGOR, IN ITS CALCULATION OF CHILD SUPPORT, AND IN DETERMINING THE INCOME OF THE PARTIES AND IMPUTING DAYCARE EXPENSES.
 {¶ 34} "IV. THE TRIAL COURT ERRED IN DESIGNATING DEFENDANTA-PPELLEE AS THE RESIDENTIAL PARENT FOR SCHOOL PLACEMENT PURPOSES.
 {¶ 35} "V. THE TRIAL COURT FAILED TO ADDRESS PLAINTIFFA-PPELLANT'S MOTION FOR ATTORNEY FEES.
 {¶ 36} "VI. THE TRIAL COURT ERRED IN FINDING PLAINTIFF-APPELLANT IN CONTEMPT FOR FAILING TO RETURN THE JEWELRY.
 {¶ 37} "VII. THE TRIAL ERRED IN RULING ON DEFENDANT-APPELLEE'S OBJECTIONS AS THE OBJECTIONS WERE NOT TIMELY FILED."
 I. {¶ 38} The First Assignment of Error reflects the court's division of marital assets.
 {¶ 39} Revised Code § 3105.171 provides those matters to be considered in making a division.
 {¶ 40} Revised Code § 3105.171 provides in part:
 {¶ 41} "(C) (1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.
 {¶ 42} "(2) Each spouse shall be considered to have contributed equally to the production and acquisition of marital property.
 {¶ 43} "(3) The court shall provide for an equitable division of marital property under this section prior to making any award of spousal support to either spouse under section 3105.18 of the Revised Code and without regard to any spousal support so awarded."
 {¶ 44} "* * * *"
 {¶ 45} "(F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
 {¶ 46} "(1) The duration of the marriage;
 {¶ 47} "(2) The assets and liabilities of the spouses;
 {¶ 48} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 {¶ 49} "(4) The liquidity of the property to be distributed;
 {¶ 50} "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 {¶ 51} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 {¶ 52} "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 {¶ 53} "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 {¶ 54} "(9) Any other factor that the court expressly finds to be relevant and equitable.
 {¶ 55} "(G) In any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of "during the marriage."
 {¶ 56} "(H) Except as otherwise provided in this section, the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property.
 {¶ 57} "(I) A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court.
 {¶ 58} "(J) The court may issue any orders under this section that it determines equitable, including, but not limited to, either of the following types of orders:
 {¶ 59} "(1) An order granting a spouse the right to use the marital dwelling or any other marital property or separate property for any reasonable period of time;
 {¶ 60} "(2) An order requiring the sale or encumbrancing of any real or personal property, with the proceeds from the sale and the funds from any loan secured by the encumbrance to be applied as determined by the court."
 {¶ 61} In reviewing the court's decision herein, we must consider the applicable standard.
 {¶ 62} The Ohio Supreme Court stated in Berish v. Berish
(1982), 69 Ohio St.2d 318:
 {¶ 63} "This court has long recognized that trial courts are vested with broad powers in determining the appropriate scope of property awards in divorce actions. As was stated in the recent case of Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355,421 N.E.2d 1293, `* * * (b)oth R.C. 3105.18, which provides that the trial court may divide property as it deems equitable, and past case law require that the trial court have broad discretion in arriving at an equitable property division.' This court further noted in Cherry that `* * * (a) reviewing court may modify or reverse a property division, (only) if it finds that the trial court abused its discretion in dividing the property as it did. Section 3(B), Article IV of the Ohio Constitution; App.R. 12.' Id."
 {¶ 64} In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
 {¶ 65} The First Assignment questions the absence in the magistrate's extensive opinion of the absence of reference to R.C. § 3105.171(F). It is not necessary that such statute be included by its designated statutory number or subsection as long as the relevant factors therein are considered. It is clear that this was done.
 {¶ 66} Next, Appellant recites that a marriage termination date must be determined or presumed. The inclusion of this requirement has no bearing on this appeal as it is not referenced as error in the Assignments.
 {¶ 67} Appellant questions the failure of Appellee to include the Fifth Third Bank account and the magistrate's lack of discussion thereof. This account was opened after the divorce was filed as was the Appellant's account No. 9285 at the same bank (see magistrate's opinion, page 7) as to which Appellee attributed no value.
 {¶ 68} We fail to see the significance of this omission or conclude that an abuse of discretion occurred in this respect.
 {¶ 69} Also, the failure to account for funds received from Appellee's father (Tr. Vol. II, p. 272) is immaterial as these funds are not marital assets.
 {¶ 70} While we agree that the magistrate did not take into account the fact that the parties had agreed on the sale and division of the proceeds of the Computershare account, Appellant cannot reasonably object to this minor omission when considered in the overall context of the 28-page opinion, since he shared in the division of the proceeds.
 {¶ 71} Also, the magistrate and the court in equitably dividing the marital assets, is not bound by the agreement to divide the small tax refunds.
 {¶ 72} The failure to give Appellant credit for reduction of the mortgage balance was addressed by the court in ruling on Appellant's objections to the magistrate's recommendations as follows:
 {¶ 73} "The Husband's second objection is that the Magistrate did not credit the Husband for reducing the balance of the first mortgage by $11,951.21 by payments made during the pendency of the case. The mortgage was reduced by virtue of the regular mortgage payments that the Husband made during the pendency of the case. The Husband did not make any other payments to the mortgage. The Defendant will benefit by the reduction in the mortgage payments upon the sale of the residence. In addition, Recommendation No: 4 (iii) credits the Husband with the entire reduction in mortgage principal on or after December 1, 2004. The Husband's second objection is overruled."
 {¶ 74} As to the $18,000.00 in loans Appellee testified she received from her family, experience teaches that it would not be unusual for such to be undocumented in a family situation and as Appellee was ordered to repay such debt along with payment of her attorney fees, this did not amount to a deprivation to Appellant who was ordered to also pay his legal fees. The specific absence of an analysis under R.C. § 3105.18(H) by number is without merit as the overall extensive financial review to justify this order is apparent.
 {¶ 75} The First Assignment is denied.
 II., III. {¶ 76} The Second Assignment concerns spousal support and the Third Assignment is closely related as each go to available income and expenses.
 {¶ 77} Appellant correctly states that the factors to be considered in regard to spousal support are listed in R.C. §3105.18(C) (1).
 {¶ 78} Such are:
 {¶ 79} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 80} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 {¶ 81} "(b) The relative earning abilities of the parties;
 {¶ 82} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 83} "(d) The retirement benefits of the parties;
 {¶ 84} "(e) The duration of the marriage;
 {¶ 85} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 86} "(g) The standard of living of the parties established during the marriage;
 {¶ 87} "(h) The relative extent of education of the parties;
 {¶ 88} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 89} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 90} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 91} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 92} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 93} "(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 94} The essential arguments as to the magistrate's and the court's decision as to such support goes to credibility of the witnesses.
 {¶ 95} The trier of fact has the principal responsibility for determining the credibility of the witnesses and the relative weight attributable to their testimony. State v. Jamison
(1990), 40 Ohio St.3d 182, certiorari denied (1990),498 U.S. 881.
 {¶ 96} The magistrate specifically reviewed such factors in applying them to the facts. See pages 15 and 16 of the magistrate's opinion.
 {¶ 97} While it is true that the vocational expert provided a report indicating potential income to Appellee of $19,681.13, such is still subject to the test of credibility, even when stipulated, as the court points out that the most Appellee ever earned in any year was $4,000.00 to $6,000.00.
 {¶ 98} With the exhaustive analysis by the magistrate and court's careful review, we find no abuse of discretion as to spousal support.
 {¶ 99} Appellant is correct in stating that abuse of discretion is the standard relative to a determination of child support, the factors of review by this court have been stated supra. Booth v. Booth (1989), 44 Ohio St.3d 142.
 {¶ 100} The applicable statutes are: R.C. § 3119.03, R.C. §3119.22 and R.C. § 3119.23 which state:
 {¶ 101} Revised Code § 3119.03 states:
 {¶ 102} "In any action or proceeding in which the court determines the amount of child support that will be ordered to be paid pursuant to a child support order or at any time a child support enforcement agency determines the amount of child support that will be paid pursuant to an administrative child support order, the amount of child support that would be payable under a child support order, as calculated pursuant to the basic child support schedule and applicable worksheet through the line establishing the actual annual obligation, is rebuttably presumed to be the correct amount of child support due."
 {¶ 103} Revised Code § 3119.22 states:
 {¶ 104} "The court may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, would be unjust or inappropriate and would not be in the best interest of the child.
 {¶ 105} "If it deviates, the court must enter in the journal the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination."
 {¶ 106} Revised Code § 3119.23 states:
 {¶ 107} "The court may consider any of the following factors in determining whether to grant a deviation pursuant to section3119.22 of the Revised Code:
 {¶ 108} "(A) Special and unusual needs of the children;
 {¶ 109} "(B) Extraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination;
 {¶ 110} "(C) Other court-ordered payments;
 {¶ 111} "(D) Extended parenting time or extraordinary costs associated with parenting time, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet, through the line establishing the actual annual obligation, or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of parenting time granted by court order;
 {¶ 112} "(E) The obligor obtaining additional employment after a child support order is issued in order to support a second family;
 {¶ 113} "(F) The financial resources and the earning ability of the child;
 {¶ 114} "(G) Disparity in income between parties or households;
 {¶ 115} "(H) Benefits that either parent receives from remarriage or sharing living expenses with another person;
 {¶ 116} "(I) The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;
 {¶ 117} "(J) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;
 {¶ 118} "(K) The relative financial resources, other assets and resources, and needs of each parent;
 {¶ 119} "(L) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;
 {¶ 120} "(M) The physical and emotional condition and needs of the child;
 {¶ 121} "(N) The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen;
 {¶ 122} "(O) The responsibility of each parent for the support of others;
 {¶ 123} "(P) Any other relevant factor.
 {¶ 124} "The court may accept an agreement of the parents that assigns a monetary value to any of the factors and criteria listed in this section that are applicable to their situation.
 {¶ 125} "If the court grants a deviation based on division (P) of this section, it shall specifically state in the order the facts that are the basis for the deviation.
 {¶ 126} Appellant cites this Court's Opinion in French v.Burkhart (May 22, 2000), Ohio Fifth Dist., Delaware App. Case No. 99CAF07038 which remanded to state facts supporting the designation of such Appellant as the obligor parent for child support calculation purposes.
 {¶ 127} Such case, being a deviation from the guidelines differs considerably from the case sub judice which is one which utilized the guidelines based on the respective incomes and expenses of the parties.
 {¶ 128} We find that the extensive review by the magistrate, as approved by the court, did not violate the standard of abuse of discretion. No extraordinary circumstances or injustice warranting deviation appear.
 {¶ 129} Both the Second and Third Assignments of Error are overruled.
 IV. {¶ 130} The Fourth Assignment finds error by the trial court in designating Appellee as residential parent for school placement purposes.
 {¶ 131} Again, the reliance on French v. Burkhart, supra, is misplaced as such case was remanded for facts designating such Appellant as the obligor parent for guideline child support calculation purposes. If such designation was for support calculations or deviation therefrom, such as in French v.Burkhart, supra, reason would be required. Such is not the case here.
 {¶ 132} The Fourth Assignment is denied.
 V. {¶ 133} The Fifth Assignment of Error concerns attorney fees.
 {¶ 134} The basis for the argument is that the court failed to address his motion for fees based upon Appellee's agreement to purchase or list the home for sale which was not done.
 {¶ 135} Appellant had the opportunity to move for an ordered sale.
 {¶ 136} However, we are not here addressing interim motions but the final decree of the court in which both parties were required to pay their own fees.
 {¶ 137} Revised Code § 3105.73, as stated, provides:
 {¶ 138} "(A) In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.
 {¶ 139} "(B) In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.
 {¶ 140} "(C) The court may specify whether the award of attorney's fees and litigation expenses under this section is payable in gross or by installments. The court may make an award of attorney's fees and litigation expenses under this section in addition to making an award of attorney's fees and litigation expenses under any other provision of the Revised Code or of the Rules of Civil Procedure.
 {¶ 141} "(D) Nothing in this section prevents an award of attorney's fees and litigation expenses from being designated as spousal support, as defined in section 3105.18 of the Revised Code."
 {¶ 142} An award of such fees lies within the sound discretion of the court. Rand v. Rand (1985),18 Ohio St.3d 356.
 {¶ 143} We find no abuse of discretion.
 {¶ 144} The Fifth Assignment of Error is denied.
 VI., VII. {¶ 145} The Sixth Assignment of Error relates to the contempt finding by the trial court as to non-return of jewelry. This is predicated on Civil Rule 53(E)(3)(a) as is the Seventh Assignment of Error.
 {¶ 146} Such Civil Rule provides:
 {¶ 147} "(a) Time for filing. A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision, regardless of whether the court has adopted the decision pursuant to Civ. R. 53(E)(4)(c). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. If a party makes a request for findings of fact and conclusions of law under Civ. R. 52, the time for filing objections begins to run when the magistrate files a decision including findings of fact and conclusions of law."
 {¶ 148} Appellee relies on the premise that issues not raised at the trial level cannot be considered on appeal.
 {¶ 149} However, due to the late filing of Appellee's objections to the magistrate's decision and no extension request within Civil Rule 53, the court lacked jurisdiction to entertain her objections. A jurisdictional issue is always present on appeal. In discussing the preservation for appellate review of a jurisdictional issue, the court in Porter v. Walker (June 15, 2005), Ohio App. 9 Dist., Lorain Case No. 04CA008575,2005-Ohio-2972, found waiver to be inapplicable and stated:
 {¶ 150} "This Court feels compelled to point out that `subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.' United Statesv. Cotton (2002), 535 U.S. 625, 630, 122 S.Ct. 1781,152 L.Ed.2d 860; See, Louisville Nashville R.R. Co. v. Mottley (1908),211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126."
 {¶ 151} Also, the Sixth Assignment is from Appellee's objection to the magistrate's findings and not from the trial court's order of return of the jewelry within ten days as contained in the Final Decree of Divorce as to which the court did have jurisdiction.
 {¶ 152} Since the court lacked jurisdiction to rule on Appellee's objections to the magistrate's findings, the contempt finding as to Appellant, was erroneous.
 {¶ 153} However, no punishment was given for such contempt and the court, in its Decree, ordered return of the jewelry within ten days. We find that the error in this regard was harmless.
 {¶ 154} Also, since the court had jurisdiction to issue the return order in its final decree. The earlier finding of contempt without punishment becomes meaningless.
 {¶ 155} For these reasons, we reject the Sixth and Seventh Assignments of Error.
 {¶ 156} This cause is affirmed at Appellant's costs.
By: Boggins, J. Gwin, P.J., concurs Edwards, J. concurs separately.