# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
GALLAGHER, ALDYKIEWICZ, and MARTIN
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist KEVIN A. GIBSON**
**United States Army, Appellant**

ARMY 20110247

Headquarters, 10th Mountain Division (Light Infantry)
Michael J. Hargis, Military Judge
Colonel Michael O. Lacey, Staff Judge Advocate

For Appellant:  Captain Jack D. Einhorn, JA; Mr. William E. Cassara, Esquire (on brief).

For Appellee:  Lieutenant Colonel Amber J. Roach, JA; Major Daniel D. Maurer, JA; Captain Sean P. Fitzgibbon, JA (on brief).

21 June 2013

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MARTIN, Judge:

A general court-martial consisting of officer and enlisted members convicted appellant, contrary to his pleas, of attempting to steal $300.00, larceny of $130.00, and wrongfully stealing mail while serving as a unit mail handler, in violation of Articles 80, 121, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 921, 934 (2006) [hereinafter UCMJ].[1]  *See Manual for Courts-Martial*, *United States* (2012 ed.), pt. IV, ¶ 93.b.(2).  The panel sentenced appellant to a dishonorable

---

[1]  Pursuant to Rules for Courts-Martial 917, at the conclusion of the evidence and before findings, the military judge granted the appellant's motion for a finding of not guilty as to the second specification of Article 134, UCMJ, for stealing mail matter.  The military judge found the government failed to present sufficient evidence that the package at issue was deposited in a postal system, or authorized depository, or in official mail channels of the United States because the package was shipped via United Parcel Service (UPS).

discharge and confinement for 1,500 days. The convening authority approved only so much of the sentence as provided for 1,410 days confinement and a dishonorable discharge.[2]

Appellant raises three assignments of error for our review under Article 66, UCMJ, of which one merits discussion but no relief. Appellant asserts that he suffered material prejudice due to the government's failure to allege the terminal elements of the Article 134, UCMJ, specification which charged that appellant wrongfully stole mail. For the reasons set forth below, we disagree.

## BACKGROUND

*Facts*

Appellant deployed to Afghanistan with his unit, 1-502nd Infantry Regiment, 2nd Brigade Combat Team, 101st Airborne Division as a human resources sergeant. For the first several months in Afghanistan, the 2nd Brigade Combat Team operated a consolidated postal operations center at Kandahar Airfield. All mail was received and accounted for, and then further distributed to its final destination, including Forward Operating Base (FOB) Wilson. Appellant was the designated, certified mail handler for 1-502nd Infantry Regiment. In this capacity, he was required to pick up all mail, sign for accountable mail (those packages that were insured), safeguard the mail, sort the mail, and deliver the mail to the correct location. Several other soldiers were designated as certified mail handlers for their respective units, and the mail handlers from the Brigade pooled manpower to sort, safeguard, and deliver the mail.

After he arrived in theater, Specialist (SPC) JP contacted his wife and requested that she ship his laptop computer to him in Afghanistan. His wife completed a customs form, insured the package, and mailed the laptop computer. After waiting for about one month for the arrival of the package, SPC JP collected the customs form and insurance number and inquired with the post office and the mail handlers about the status of the package. He discovered that the package had arrived at the Kandahar mail facility, and was signed for by appellant. SPC JP asked appellant about the package, and appellant directed him to another mail handler, stating that the package had been mistakenly re-directed to FOB Wilson. This conduct was the basis of Specification 1 of the Article 134, UCMJ, charge and is also the subject of the assignment of error for discussion.

Sergeant (SGT) KA also deployed to Afghanistan with 2nd Brigade Combat Team, 101st Airborne Division and was assigned to FOB Wilson. Upon arrival in

---

[2] The action failed to credit appellant with two days of confinement pursuant to Article 13, UCMJ. We will provide appropriate credit in our decretal paragraph.

theater, he too contacted his wife and asked her to mail him his laptop computer. SGT KA's wife sent the package containing a black backpack and laptop computer via UPS rather than the U.S. postal service, and insured the package. SGT KA never received the items.

A few days after SPC JP discovered his laptop computer was missing, appellant contacted SPC JP and offered to sell him a different laptop computer. Appellant explained that another soldier had either sold or given the laptop computer to appellant while his was being repaired, and he no longer needed it. Since SPC JP still had not received his laptop computer, he agreed to purchase the laptop computer from appellant for $300.00. After some negotiation, appellant allowed SPC JP to take the laptop computer, with the understanding that SPC JP would pay appellant the full $300.00 after the next pay day. This conduct formed the basis of appellant's Article 80, UCMJ, attempted larceny conviction.

Specialist JP took the laptop computer to his quarters and reviewed the history. He found that many of the files had been deleted the same day he purchased the laptop computer, and he became suspicious. He continued to investigate and found files and other information belonging to another soldier, SGT KA. Specialist JP contacted his command as well as SGT KA. Sergeant KA confirmed that he was missing a laptop computer, and was able to identify the specifications of the laptop computer sold to SPC JP by appellant. Appellant's theft of SGT KA's laptop computer was the basis of Specification 2 of the Article 134, UCMJ, charge, the specification of which appellant was found not guilty.

*Charges*

Specification 1 of the Article 134 charge alleged:

> In that Specialist (E-4) Kevin A. Gibson, U.S. Army, did, at or near Kandahar Airfield, Afghanistan, on or about 22 July 2010, steal certain mail matter, to wit: a package addressed to Specialist (E-4) [JP], which said package was then in the custody of Specialist (E-4) Kevin A. Gibson, a representative of 1st Battalion, 502nd Infantry Regiment as part of his official duties, before said package was delivered to the addressee.

Specification 2 of the Article 134 charge alleged:

> In that Specialist (E-4) Kevin A. Gibson, U.S. Army, did, at or near Kandahar Airfield, Afghanistan, on or about 25 August 2010, steal certain mail matter, to wit: a package addressed to Sergeant (E-5) [KA], which said package was

3

then in the custody of Specialist (E-4) Kevin A. Gibson, a
representative of 1st Battalion, 502nd Infantry Regiment
as part of his official duties, before said package was
delivered to the addressee.

*Court-Martial*

During the government's case on the merits, SPC JP testified first. The government elicited evidence regarding the circumstances of the theft of his laptop computer, and the evidence concerning appellant's suspicious activity as it related to the sale of the laptop computer. At the end of the direct examination, SPC JP testified as follows:

Q:    SPC [JP], is mail important to you as a Soldier?

A:    Yes, sir.

Q:    Why?

A:    It boosts morale, sir, my laptop alone would have
allowed me to see my wife on a daily basis, talk to her.

Q:    So how did the theft of your computer affect you?

A:    It didn't allow me to see my wife and talk to her.

The defense counsel did not object to this line of questioning for SPC JP. The next government witness was SGT KA. Similar to the direct examination of SPC JP, after eliciting evidence to support elements of the theft of computer from the mail, the trial counsel asked SGT KA the following questions, questions relating to the impact of the theft on SGT KA:

Q:    Was there anything about [sic] this computer when
it was returned that you were not able to recover?

A:    Yes, sir, there was an accumulation of 5 years worth
of pictures from both family and friends, theme parks,
vacations, all gone.

Q:    You've never been able to get them back?

A:    Negative, sir.

Q:    How did this effect [sic] your perception of the
Army mail system?

The defense counsel objected based on relevance. When asked by the military judge for a response to the objection, the trial counsel stated:

TC:   You Honor, this goes to the element of Charge III,
Specification 2, which requires that the theft be
prejudicial to good order and discipline; the effect of the
theft is required to prove this element.

MJ:  Objections [sic] overruled. . . . It's relevant to the
element.

The trial counsel then continued with this line of questioning asking SGT KA why the mail was important to him, and how the theft of the laptop computer affected his ability to complete his mission and affected his morale.

During closing argument, the trial counsel again addressed the element of prejudice to good order and discipline, citing the importance of mail to the morale of deployed soldiers. Likewise the defense counsel used pre-printed materials that listed each element of each offense to argue that the government failed to meet its burden to prove each element beyond a reasonable doubt. However, the trial defense counsel conceded the prejudicial to good order and discipline element, stating that it is "established by any theft of mail." Finally, the military judge instructed the panel on the element.

## LAW AND DISCUSSION

The specification at issue does not expressly allege the Article 134, UCMJ, terminal element of conduct that is either prejudicial to good order and discipline (Clause 1) or of a nature to bring discredit upon the armed forces (Clause 2). "Where, as here, a specification neither expressly alleges nor necessarily implies the terminal element, the specification is defective." *United States v. Gaskins*, 72 M.J. 225, 231–32 (C.A.A.F. 2013) (citing *United States v. Fosler*, 70 M.J. 225, 229–30 (C.A.A.F. 2011)). Appellant did not object to the form of the specification at trial, and "where defects in a specification are raised for the first time on appeal, dismissal of the affected charges or specifications will depend on whether there is plain error—which, in most cases will turn on the question of prejudice." *United States v. Humphries*, 71 M.J. 209, 213–14 (C.A.A.F. 2012) (citing *United States v. Cotton*, 535 U.S. 625, 631–32 (2002)). Therefore, appellant must demonstrate "the Government's error in failing to plead the terminal element of Article 134, UCMJ, resulted in material prejudice to [appellant's] substantial, constitutional right to notice." *Id.* at 215; UCMJ art. 59(a). To assess prejudice, "we look to the record to

determine whether notice of the missing element is somewhere extant in the trial record, or whether the element is 'essentially uncontroverted.'" *Id.* at 215–16 (citing *Cotton*, 535 U.S. at 633; *Johnson v. United States*, 520 U.S. 461, 470 (1997)).

After thoroughly reviewing the record, we find the government put on direct evidence of the terminal element, and alerted the defense to its theory of criminality. *Gaskins*, 72 M.J. at 234–35. *See United States v. Goings*, 72 M.J. 202 (C.A.A.F. 2013) (finding the appellant was not prejudiced by the government's failure to plead the terminal elements because it proffered its theory of criminality, presented direct evidence on the terminal elements, and appellant put on a vigorous defense). Here, the two Article 134, UCMJ, specifications were identical, but for the date of the offense and the named victim of the offense. The record contains extensive, direct evidence of the terminal element of prejudice to good order and discipline for the specification relating to SGT KA. Additionally, the trial counsel asked a series of questions pertaining to the impact of the theft upon SPC JP. Clearly, without relevance to an element of an offense, victim impact evidence would not normally be part of the government's findings case. Instead, the record of trial reveals the trial counsel used the impact evidence to address the terminal element. Therefore, when the trial counsel unambiguously established the connection in regards to the one specification involving SGT KA, we conclude appellant was on notice of the terminal element for the other, identical specification involving SPC JP.

This is further substantiated by the fact that both victims for this charge testified back-to-back for the government, and the discussion of the element of prejudice to good order and discipline took place a mere twenty-nine pages later in the record of trial. The trial counsel elicited similar evidence from both victims, but did not draw an objection until the direct examination of SGT KA, at which time he thoroughly explained the reason why he asked the questions relating to victim impact. There is no question that the government presented direct evidence of the terminal element, and appellant was on notice of the government's theory of criminality.

Finally, a review of this case demonstrates that the government counsel discussed its theory of criminality during its closing argument. Likewise the defense counsel discussed the element during the closing argument, going so far as to use pre-printed slides that included the element, and conceding that the crime was prejudicial to good order and discipline.[3] Finally, the military judge gave the

---

[3] Additionally, while we need not decide the issue here, the defense's concession that "any theft of mail" is prejudicial to good order and discipline arguably establishes that the Clause 1 terminal element was "essentially uncontroverted." *Humphries*, 71 M.J. at 215–16 (citing *Cotton*, 535 U.S. at 633; *Johnson v. United States*, 520 U.S. 461, 470 (1997)). Using this approach, there would be no prejudice to appellant.

appropriate findings instruction. In *Goings*, our superior court made clear that finding appellant was on notice based on closing arguments alone, *"without more*, is error under both *Fosler* and *Humphries."* *Goings*, 72 M.J. at 208 (emphasis added). Unlike that line of cases, however, the facts here reflect direct evidence of the terminal element combined with this additional basis, making it clear under the totality of the circumstances that appellant was placed on sufficient notice of the government's theory as to which clause of Article 134, UCMJ, he violated and had to defend against. *See United States v. Tunstall*, 72 M.J. 191, 197–98 n.8 (C.A.A.F. 2013) (noting that while standing alone closing arguments and instructions by the military judge are insufficient to show notice, these factors in combination with direct evidence are relevant to this determination). As a result, appellant's substantial rights to notice were not materially prejudiced by the government's failure to allege the terminal elements. *See* UCMJ art. 59(a).

## CONCLUSION

On consideration of the entire record, appellant's assigned errors, and the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), we hold the findings of guilty and the sentence as approved by the convening authority correct in law and fact. Accordingly, the findings of guilty and the sentence are AFFIRMED. Appellant will be credited with two days of confinement against his sentence to confinement.

Judges GALLAGHER and ALDYKIEWICZ concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

7